**Robert V. SERRAO, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

No. 95–3562.

United States Court of Appeals, Federal Circuit.

Sept. 17, 1996.

---

Mitchell Kastner, Schneider, Freiberger & Kastner, Red Bank, NJ, for petitioner.

William A. Cardoza, Office of General Counsel, Merit Systems Protection Board, Washington, DC, for respondent. On the brief were Mary L. Jennings, Acting General Counsel, Patricia A. Price, Acting Assistant General Counsel, and Sherry A. Armstrong, Attorney.

Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.

Opinion for the court filed by Circuit Judge SCHALL. Dissenting opinion filed by Circuit Judge NEWMAN.

SCHALL, Circuit Judge.

Robert V. Serrao petitions for review of the final decision of the Merit Systems Protection Board ("Board") in *Serrao v. Department of Commerce,* Docket No. NY–1221–95–0317–W–1. The March 21, 1995 initial decision of the Administrative Judge ("AJ") became the final decision of the Board after Serrao failed to file a petition for review. In his decision, the AJ dismissed for lack of jurisdiction the individual right of action ("IRA") appeal that Serrao sought to bring before the Board pursuant to the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (1989) (codified at scattered sections of 5 U.S.C.) ("WPA"). We affirm.

## BACKGROUND

### I.

Serrao is a Special Agent in the New York Field Office of the Office of Export Enforcement of the United States Department of Commerce ("agency"). On January 18, 1994, Josephine Fontana Moran, Serrao's supervisor, removed Serrao from the Kennedy Airport/New York City work rotation and assigned him to work in New York City.

The agency has an administrative grievance system. It is embodied in Department Administrative Order 202–771, dated March 18, 1986 (the "Grievance Order"). On February 3, 1994, Serrao exercised his rights under

the system by filing an informal grievance with Ms. Moran pursuant to Section 5 of the Grievance Order. In it, he alleged that the action taking him off the Kennedy Airport/New York City work rotation was a "disciplinary action" that was indicative of "selective treatment" against him by Ms. Moran. Ms. Moran denied the grievance on February 14, stating that she had not changed Serrao's work station for disciplinary reasons, but rather, because of her concern over his "on-going uncooperative, unprofessional, and insubordinate behavior which is adversely affecting employee morale and office operation."

On February 19, 1994, pursuant to Section 6 of the Grievance Order, Serrao filed a formal grievance with Carl B. Ward, Chief of the Human Resources Division for the agency's Eastern Region.[1] Serrao stated that the grievance was in response to Ms. Moran's denial of his February 3 informal grievance. He informed Mr. Ward that the relief he was requesting was "reinstatement to the JFK office rotation." In support of his formal grievance, Serrao submitted a document which he termed a "detailed response." In the "detailed response," Serrao made a series of charges against Ms. Moran. First, he wrote that Ms. Moran had conducted a "harassment campaign" against him over a two-year period. He suggested that this was because she believed that he was the anonymous source of information that led to a 1991 investigation by the agency's Office of Inspector General ("OIG") into allegations of misconduct on her part. These allegations included charges that Ms. Moran made personal telephone calls from her office and that she was given passing scores that she did not earn for quarterly firearms tests. Serrao asserted that Ms. Moran had confronted him several times during the OIG investigation, saying that she knew he was the source of the allegations against her. Serrao also charged that, in 1992, Ms. Moran had obstructed justice by ordering him to close out

an undercover investigation. Serrao claimed that this action was in retaliation for his having refused (before she was his supervisor) to allow her to participate in the investigation. Serrao further charged that Ms. Moran had violated federal sick leave regulations. The record before us does not reveal how the formal grievance was resolved. It does not appear, however, that Serrao was reassigned to Kennedy Airport.

Meanwhile, on March 1, 1994, Serrao filed a second informal grievance with Ms. Moran. In it, he challenged an official reprimand that she issued to him on February 16 for "unprofessional, disrespectful and insubordinate conduct." Ms. Moran denied the grievance on March 16.

On March 10, 1994, Serrao filed a complaint with the United States Office of Special Counsel ("OSC").[2] Serrao stated that Ms. Moran had taken reprisal actions against him and that she had accused him of being the person who instigated the 1991 OIG investigation. Referring to the grievance that he initially had filed with Mr. Ward on February 19, Serrao stated:

I have recently filed a grievance against my supervisor, Special Agent in Charge (SAIC) of the New York Field Office[,] . . . Josephine Fontana Moran. Initially, I filed an informal grievance which was denied by the SAIC. I followed the informal grievance with a formal grievance which was filed with my personnel office. The grievance was based on an harassment campaign waged against me by the SAIC for over a two year period.

I want at this time to file a complaint with the Office of Special Counsel . . . against the SAIC claiming a prohibited personnel practice as she has threatened to take a personnel action against me as a result of my filing this grievance. Since the filing of this grievance, the SAIC has retaliated against me in the form of several adverse action forms and a written reprimand,

---

1. This grievance was refiled on March 23, 1994. Accordingly, documents in the record generally refer to it as the March 23 grievance. To be consistent with the record, we will follow that approach here, except where the context requires otherwise.

2. OSC is responsible for receiving and investigating allegations of prohibited personnel practices under the WPA. 5 U.S.C. § 1212(a). The statutory provisions relating to OSC are at 5 U.S.C. §§ 1211–19.

threatening to suspend or remove me from Federal Service.

On March 26, 1994, Serrao filed another formal grievance with Mr. Ward. In it, he complained about Ms. Moran's March 16 denial of his informal grievance that followed his reprimand for insubordinate behavior. Serrao referred to Ms. Moran's "abusive tirades" against him over a period of two years, stating that she was retaliating against him because of "his filing of a grievance against her." The response to the March 26 grievance appears, from the record, to be an October 31, 1994 memorandum from Frank W. Deliberti, an agency management official. Mr. Deliberti stated that "Ms. Moran's written reprimand dated February 16, 1994 was fully justified" and that he had found no evidence to support Serrao's claim that the reprimand was "a retaliatory action on Ms. Moran's part."

On October 4, 1994, Ms. Moran rated Serrao's performance as "marginal," and on October 6, she placed him on a performance improvement plan. In so doing, she wrote: "[I]f your performance continues to deteriorate to the unsatisfactory level, I will have no choice but to initiate action to remove you from your position as a Criminal Investigator." On October 12, Serrao reported these "additional acts of retaliation" to OSC. Serrao stated: "I would greatly appreciate it if you would add to your 'final' report an addendum to include my recent year end performance rating which I received on October 6, 1994. I also was put on a Performance Improvement Plan.... These additional acts of retaliation must be forwarded with your report."

## II.

On February 14, 1995, Serrao filed an appeal with the Board, purportedly under the WPA. Serrao stated that, pursuant to 5 C.F.R. § 1209.2(a),[3] he was appealing the October 4, 1994 performance appraisal and the October 6, 1994 decision to place him on a performance improvement plan. He alleged that his marginal performance rating and the performance improvement plan were "in retaliation for ... protected whistleblowing in violation of 5 U.S.C. section 2302(b)(8)." Serrao made two charges of retaliation. First, he cited the statement in his March 23 formal grievance that Ms. Moran had conducted a two year harassment campaign against him because she believed he was the source of the 1991 allegations to the OIG. As Serrao quoted them to the Board, "[t]he [OIG] allegations accused the SAIC of regularly making personal telephone calls from the NYFO and also of being given passing scores for the quarterly firearms training when in fact they were not actually attained." According to Serrao, the statement in the March 23 grievance "constitutes 2302(b)(8) disclosure because Mr. Serrao accuses Ms. Moran of violating 2302(b)(8) by retaliating against him because she believed he had blown the whistle on her." Second, Serrao cited the statement in the March 26 formal grievance that referred to "abusive tirades" by Ms. Moran as "just another example of an abuse of authority, gross mismanagement, and retaliation on the part of the SAIC against the R/A." Serrao claimed that his March 26 statement "constitutes 2302(b)(8) disclosure because Mr. Serrao accuses Ms. Moran of violating 2302(b)(9) by retaliating against him because he had filed a grievance against her." Finally, Serrao stated that he had furnished OSC with copies of his March 23 and March 26 formal grievances.

After the appeal was filed, the AJ issued an acknowledgement order in which he directed Serrao to file a submission addressing the question of the Board's jurisdiction. The AJ informed Serrao that the matters he was appealing—the performance appraisal and his placement on a performance improvement plan—did not appear to be actions that were appealable to the Board. The AJ stated: "[Y]our petition will be dismissed unless you allege facts that if true would show that a personnel action was taken, proposed,

---

3. Citing 5 U.S.C. § 1214(a)(3), the applicable provision of the WPA, this regulation states in pertinent part that an employee "may appeal to the Board from agency personnel actions alleged

to have been threatened, proposed, [or] taken ... because of the appellant's whistleblowing activities."

threatened, or not taken because of your whistleblowing activities." On March 1, 1995, Serrao responded to the acknowledgement order and asserted that the Board had jurisdiction because his action was an IRA appeal under the WPA. Serrao enclosed with his response a copy of a February 22, 1995 letter from OSC to his attorney. The pertinent part of his letter read as follows:

> This letter is to confirm our conversation concerning the complaint submitted to the ... OSC ... by your client, Robert Serrao. In the complaint, ... Mr. Serrao stated that he had received a lowered performance appraisal rating and a written reprimand. Mr. Serrao also explained that agency officials removed him from a detail, harassed him, and threatened him with (1) a lowered performance appraisal rating (and subsequent placement on a performance improvement plan); (2) suspension; and (3) removal. Mr. Serrao alleged that the agency officials took or threatened to take these actions because he had filed a grievance against his supervisor, because he made disclosures of abuse of authority, gross mismanagement, and harassment, and because he was mistakenly identified as the source of a complaint to the agency's Office of Inspector General.

On March 25, 1995, the AJ dismissed Serrao's appeal for lack of jurisdiction. The AJ ruled first that the Board did not have jurisdiction over the appeal under 5 U.S.C. § 7701(a)(1) because the performance rating and performance improvement plan were not adverse actions under 5 U.S.C. § 7512.[4] Turning to Serrao's contention that he had filed an IRA appeal over which the Board had jurisdiction under the WPA, the AJ determined that the Board lacked jurisdiction because the disclosures upon which Serrao based his appeal were made in grievance proceedings. The AJ stated: "[T]he appellant failed to establish that he made disclosures protected by 5 U.S.C. § 2302(b)(8). The Board has held that disclosures made within grievance proceedings are covered by 5 U.S.C. § 2302(b)(9) rather than § 2302(b)(8)."

## DISCUSSION

We must affirm the AJ's decision to dismiss Serrao's appeal unless Serrao establishes that the decision is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994). The jurisdiction of the Board is not plenary. Rather, it is limited to those matters specifically entrusted to it by statute or regulation. *See* 5 U.S.C. § 7701(a)(1); *Walls v. Merit Sys. Protection Bd.*, 29 F.3d 1578, 1581 (Fed.Cir.1994); *Miller v. Department of the Army*, 987 F.2d 1552, 1554 (Fed.Cir.1993). A petitioner has the burden of establishing Board jurisdiction by a preponderance of the evidence. 5 C.F.R. § 1201.56(a)(2). Jurisdiction is a question of law that we review *de novo*. *King v. Briggs*, 83 F.3d 1384, 1387 (Fed.Cir. 1996).

Serrao does not challenge the AJ's ruling that his petition to the Board did not qualify as an adverse action appeal. Thus, the only issue before us is whether the AJ erred in dismissing the petition as an IRA appeal.

## I.

When, as in this case, there does not exist an independent right to appeal an adverse personnel action directly to the Board, an employee may be able to bring an IRA appeal. *See* 5 U.S.C. § 1214(a)(3). The right to an IRA appeal is set forth in 5 U.S.C. § 1221. The statute provides that "[s]ubject to the provisions of ... subsection 1214(a)(3), an employee ... may, with respect to any personnel action taken, or proposed to be taken against such employee, ... as a result of a prohibited personnel practice described in section 2302(b)(8), seek corrective action

---

4. Pursuant to 5 U.S.C. § 7701(a)(1), a petitioner may appeal to the Board from any action which is appealable to the Board "under any law, rule, or regulation." The appealable adverse actions listed in 5 U.S.C. § 7512 are (1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less. *See also* 5 C.F.R. § 1201.3(a)(2).

from the Merit Systems Protection Board." 5 U.S.C. § 1221(a). Section 2302(b)(8) provides in pertinent part as follows:

(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

\*     \*     \*     \*     \*     \*

(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee ... because of—

(A) any disclosure of information by an employee ... which the employee ... reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or

(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety ...; or

(B) any disclosure to the Special Counsel, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee ... reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or

(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

The term "personnel action" is defined in 5 U.S.C. § 2302(a)(2)(A). Among other things, it includes the actions listed in 5 U.S.C. § 7512 (as well as "other disciplinary or corrective action") and performance evaluations. 5 U.S.C. § 2302(a)(2)(A)(iii), (viii); 5 C.F.R. § 1209.4(a)(3), (8). Finally, 5 U.S.C. § 1214(a)(3) provides that, "[e]xcept in a case in which an employee ... has the right to appeal directly to the Merit Systems Protection Board under any law, rule, or regulation, any such employee ... shall seek corrective action from the Special Counsel before seeking corrective action from the Board." Only after OSC has notified the employee that it has terminated its investigation or has failed to commit to pursuing corrective action within 120 days may that person file an IRA

appeal with the Board under section 1221(a). 5 U.S.C. § 1214(a)(3).

Thus, in order to establish the Board's jurisdiction over his IRA appeal, Serrao had to show by preponderant evidence that (1) he engaged in whistleblowing activity by making a disclosure protected by 5 U.S.C. § 2302(b)(8); (2) the agency took or threatened to take a "personnel action" against him as defined in 5 U.S.C. § 2302(a)(2)(A); (3) he sought corrective action from OSC; and (4) he exhausted corrective action proceedings before OSC. *Mintzmyer v. Department of Interior*, 84 F.3d 419, 422 (Fed.Cir.1996).

## II.

■ We hold that the AJ did not err in dismissing Serrao's IRA appeal for lack of jurisdiction. The ground for our holding is that, as explained below, before bringing his appeal, Serrao did not seek corrective action from OSC with respect to reprisal for having made disclosures protected by 5 U.S.C. § 2302(b)(8).

### A.

In his March 10 complaint to OSC Serrao claimed that Ms. Moran had retaliated against him for his having filed a grievance against her in connection with his transfer from Kennedy Airport. He stated: "[S]he has threatened to take a personnel action against me as a result of my filing this grievance." Thereafter, on October 12, Serrao reported what he believed were additional acts of retaliation on Ms. Moran's part. In short, Serrao complained to OSC about various alleged acts of reprisal (reprimands and a marginal performance rating) for his having filed a grievance against Ms. Moran.

As seen above, under 5 U.S.C. § 1221(a), an IRA appeal may be brought "with respect to any personnel action taken ... as a result of a prohibited personnel practice described in section 2302(b)(8)...." This court has stated that section 1221 "gives the Board subject-matter jurisdiction *only* on claims brought under § 2302(b)(8)." *Weber v. Dep't of the Army*, 9 F.3d 97, 100 (Fed.Cir.1993). Serrao's claim that he suffered reprisal for filing a grievance against Ms. Moran is a

charge of a prohibited personnel practice under 5 U.S.C. § 2302(b)(9)(A), however. Among other things, that section makes it unlawful to take or threaten to take a personnel action against an employee because of the employee's "exercise of any appeal, complaint, or grievance right granted by law, rule, or regulation...." Serrao claimed that Ms. Moran undertook reprisal action against him because he exercised his right to file a formal grievance under Section 6 of the Grievance Order, which we view as a "rule" for purposes of section 2302(b)(9)(A). Because Serrao's complaint to OSC was based upon an alleged prohibited personnel practice under section 2302(b)(9)(A), the Board did not have jurisdiction under section 1221. *See Weber*, 9 F.3d at 100–01.

### B.

Serrao seeks to avoid the jurisdictional bar by making two arguments. First, he contends that the fact that he exercised rights under the Grievance Order should not bar Board jurisdiction. Serrao bases this argument on certain language in *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679 (Fed.Cir. 1992). In *Spruill*, we held that the filing of a complaint with the Equal Employment Opportunity Commission ("EEOC"), in which an employee alleged discriminatory treatment by an agency in violation of Title VII of the Civil Rights of 1964, did not constitute a whistleblowing disclosure within the meaning of section 2302(b)(8), but instead, was a non-whistleblowing disclosure under section 2302(b)(9)(A). Consequently, we concluded that the Board was without jurisdiction over Spruill's IRA appeal. In the course of our decision, we noted that "investigative and remedial measures are available to Spruill through the EEOC," 978 F.2d at 692, and we catalogued those measures, *id.* at 692 n. 17. Noting this language, Serrao states that the petitioner in *Spruill* "had [an] alternative forum in which to litigate his reprisal claim in which he could have received full relief." Serrao contrasts his situation, in which, under the Grievance Order, he was limited to seeking relief within the agency through informal and formal grievances decided by agency officials. Thus, Serrao argues that

he had "no forum in which to litigate his claim other than the Board."

We must reject Serrao's argument. First, section 2302(b)(9)(A) is unqualified. It refers to "the exercise of *any* appeal, complaint, or grievance right granted by *any* law, rule, or regulation...." (Emphasis added.) There is no caveat to the effect that the section only covers grievance rights with respect to which, in Serrao's words, an "alternative forum" such as the EEOC is available. Second, as the court pointed out in *Spruill*, in enacting sections 2302(b)(8) and 2302(b)(9)(A), Congress purposefully drew a distinction between "reprisal based on disclosure of information and reprisal based upon exercising a right to complain." 978 F.2d at 690. The former is covered in section 2302(b)(8), the latter in section 2302(b)(9)(A). It was this distinction that formed the basis for the court's holding in *Spruill*. *See* 978 F.2d at 689–92. In view of the clear, unqualified language of the statute, we do not read the *Spruill* court's discussion of the EEOC process as suggesting that the existence of the jurisdictional bar turns upon whether a "grievance right" granted by an agency "rule" includes remedies equivalent to those available in the EEOC process.

### C.

Serrao's second argument against the jurisdictional bar is that, even assuming his OSC complaint was based upon alleged section 2302(b)(9)(A) reprisal, he nevertheless presented section 2302(b)(8) reprisal claims. In making this argument, he points out that in his March 10 complaint to OSC, he referred to the 1991 OIG investigation and stated that "on numerous occasions" Ms. Moran accused him "of being the one who called the OIG." He also points out that, in the "detailed response" that he included with his March 23 formal grievance, he discussed both the OIG investigation (and Ms. Moran's alleged belief that he was the source of the information that led to it), as well as his allegations concerning the termination of the undercover investigation and Ms. Moran's misuse of sick leave. Thus, Serrao contends that, in his formal grievance and in his complaint to OSC that he suffered reprisal for

having filed the grievance, he raised a claim of reprisal for having made protected disclosures under section 2302(b)(8). Consequently, the Board has jurisdiction. We disagree.[5]

Preliminarily, it is important to note that Serrao is complaining about two kinds of alleged reprisal: (i) reprisal that he suffered because of disclosures that were made anonymously but that were attributed to him (the 1991 OIG investigation); and (ii) reprisals that he suffered as a result of disclosures that he made (relating to the termination of the undercover investigation and the misuse of sick leave). We address the latter first.

In *Ellison v. Merit Systems Protection Board,* 7 F.3d 1031 (Fed.Cir.1993), we agreed that "where an employee makes one disclosure to supervisors in an agency grievance proceeding and one to the agency IG, the fact that both disclosures stem from the same set of operative facts is not necessarily inconsistent with the Board's jurisdiction over an IRA appeal." *Id.* at 1035. Thus, we stated that "the fact that Ellison filed a grievance through agency procedures in response to the contested personnel action did not in and of itself disqualify him from pursuing corrective action under the WPA as well" if he also presented his disclosures to the agency IG and, if necessary, sought corrective action from OSC. *Id.* Here, however, Serrao only made disclosures "in an agency grievance proceeding." He never presented to the OIG his allegations that Ms. Moran improperly terminated the undercover investigation and misused her sick leave. Consequently, the question squarely raised with

respect to these allegations is whether the Board has jurisdiction under 5 U.S.C. § 1221(a) when disclosures allegedly protected under 5 U.S.C. § 2302(b)(8) are made solely in the course of exercising agency grievance rights and never are presented outside of that context.

In *Fisher v. Department of Defense,* 52 M.S.P.R. 470 (1992), the Board held that only disclosures made outside grievance procedures or discrimination complaint procedures could serve as the basis for Board jurisdiction over an IRA appeal. Accordingly, in remanding to an administrative judge an appeal in which "the channels through which the appellant's disclosures were made" were "unclear," the Board stated: "If the [administrative judge] finds that all of the appellant's disclosures were made through the agency's grievance procedure or the discrimination complaint process, the appeals must be dismissed for lack of Board jurisdiction." *Id.* at 473. We agree with *Fisher.*[6] Allowing a petitioner to meet the jurisdictional requirements for an IRA appeal by inserting section 2302(b)(8) allegations into an agency grievance would undercut *Spruill.* It also would blur "the deliberate and substantive distinction established by Congress" between "whistleblowing" disclosures, protected under section 2302(b)(8), and the exercise of grievance rights, protected under section 2302(b)(9)(A). *Ellison,* 7 F.3d at 1035. The Board did not have jurisdiction over the section 2302(b)(8) disclosures purportedly contained in Serrao's grievances.[7]

5. The dissent notes that the brief of the Board states that Serrao "had previously sought corrective action from the Office of Special Counsel." This concession as to a legal issue is not binding upon us, however, and does not affect the outcome of the case. Questions of law are entirely within our own purview to decide. *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 762–64, 9 USPQ2d 1417, 1421–23 (Fed.Cir.1988), *cert. denied,* 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 30 (1989) (any "issue of law is subject to plenary review and determination").

6. *Bump v. Department of the Interior,* 64 M.S.P.R. 326 (1994), cited by the dissent, is distinguishable from *Fisher* in that Mr. Bump made his disclosures both through the agency's grievance process and in a separate communication to OSC. Consequently, the Board found that Mr.

Bump was entitled to a jurisdictional hearing. *Id.* at 332.

7. We use the word "purportedly" to describe the disclosures contained in Serrao's formal grievance because we express no view as to whether those disclosures would qualify for protection under the WPA. *See Ward v. Merit Sys. Protection Bd.,* 981 F.2d 521, 525–27 (Fed.Cir.1992) (affirming the Board's dismissal of an IRA appeal for lack of jurisdiction, where the appellant failed to raise a nonfrivolous allegation of jurisdiction because he could not reasonably have believed that the disclosure he made related to a matter involving a "waste of funds" under 5 U.S.C. § 2302(b)(8)(A)(ii)).

Serrao's charge that he suffered reprisals because Ms. Moran mistakenly believed that he was the source of the allegations involved in the 1991 OIG investigation presents a somewhat different question. The Board has held that "[a]n employee who does not engage in protected activity may nonetheless be covered by the WPA where a retaliatory personnel action is taken against him based on the belief that he had engaged in protected activity." *Special Counsel v. Department of the Navy,* 46 M.S.P.R. 274, 278 (1990). We need not address this issue, however.[8] The reason is that, even assuming the ruling in *Special Counsel* is correct, this kind of alleged reprisal still would have to be the subject of a complaint seeking corrective action from OSC. 5 U.S.C. § 1214(a)(3). That was not the case here.

■ The test of the sufficiency of an employee's charge of whistleblowing to OSC is the statement that the employee makes in the complaint to OSC requesting corrective action under 5 U.S.C. § 1214(a)(3), not the employee's subsequent characterization of that statement in his appeal to the Board. *Ward v. Merit Sys. Protection Bd.,* 981 F.2d 521, 526 (Fed.Cir.1992). The only complaint Serrao lodged with OSC was the charge that Ms. Moran took reprisal action against him as a result of his having filed a formal grievance against her in connection with his transfer from Kennedy Airport. ("I want at this time to file a complaint with the Office of Special Counsel ... against the SAIC claiming a prohibited personnel practice as she has threatened to take a personnel action against me as a result of my filing this grievance.") As already discussed in Part A above, this was a request for corrective action with respect to a section 2302(b)(9)(A) prohibited personnel practice. It was not converted to a request for corrective action with respect to a section 2302(b)(8) prohibited personnel practice by the fact that Serrao referred in his complaint to the 1991 OIG investigation or by the fact that the basis for the complaint was the charge that Serrao suffered reprisal for having filed the March

23 formal grievance, in which he also referred to the 1991 OIG investigation.

In *Ward,* we stated that an employee "must 'give the Office of Special Counsel sufficient basis to pursue an investigation which might have led to corrective action.'" 981 F.2d at 526 (quoting *Knollenberg v. Merit Sys. Protection Bd.,* 953 F.2d 623, 626 (Fed.Cir.1992)). We also have referred to "the need for an employee to articulate with reasonable clarity and precision [before OSC] the basis for his request for corrective action under the WPA." *Ellison,* 7 F.3d at 1037. Most recently, in *Mintzmyer v. Department of Interior,* we held that the Board lacked jurisdiction, in an IRA appeal, with respect to certain reprisals an employee allegedly suffered as a result of having made protected disclosures under section 2302(b)(8). In her complaint with the Office of Special Counsel, Mintzmyer alleged that her agency had taken four specified personnel actions against her in reprisal for whistleblowing. 84 F.3d at 422. She also alleged generally that she had been "'subjected to constructive discharge by harassing and retaliatory behavior.'" *Id.* (quoting allegations in OSC complaint). It was not until she appealed to the Board, however, that Mintzmyer specified what this "harassing and retaliatory behavior" was. She did so by listing four asserted acts of reprisal. *Id.* In affirming the Board's dismissal of Mintzmyer's IRA appeal insofar as it related to these four acts, we stated that Mintzmyer's failure to raise these alleged reprisal actions before the OSC deprived the Board of jurisdiction over them. We stated that, as far as these alleged acts of reprisal were concerned, Mintzmyer had failed to meet *Ellison*'s requirement of articulating "with reasonable clarity and precision the basis for [her] request for corrective action under the WPA" to the Office of Special Counsel. *Id.*

Under 5 U.S.C. § 1214(a)(3), an employee is required to "seek corrective action from the Office of Special Counsel before seeking corrective action from the Board." Based upon *Ward, Ellison,* and *Mintzmyer,* we are not prepared to hold that this requirement is

---

8. We also need not address whether the anonymous disclosures that led to the OIG investiga-

tion qualified for protection under the WPA. *See* note 7, *supra.*

met when, as in Serrao's case, an employee expressly seeks corrective action from OSC for reprisal for the exercise of grievance rights (a matter not within the Board's jurisdiction) and, in so doing, includes a statement that his supervisor believes him to be the anonymous source of allegations that led to an investigation that took place more than two years before the OSC complaint was filed. For us to so hold, we would have to ignore the requirement stated in *Ellison* that an employee's request for corrective action be articulated "with reasonable clarity and precision." This requirement is particularly important in a case such as this, where reading the OSC complaint as seeking corrective action for a section 2302(b)(8) prohibited personnel practice would have the effect of blurring the distinction between section 2302(b)(8) and section 2302(b)(9)(A) prohibited personnel practices articulated in *Spruill.* The Board did not have jurisdiction over Serrao's claim of reprisal relating to the 1991 OIG investigation.[9]

## CONCLUSION

Serrao was not the subject of a personnel action appealable to the Board as an adverse action under 5 U.S.C. § 7701(a)(1). Accordingly, the only way he could bring his IRA appeal to the Board was by first seeking corrective action from OSC for reprisal for having made disclosures protected under 5 U.S.C. § 2302(b)(8), as required by 5 U.S.C. § 1214(a)(3). For the reasons set forth above, Serrao did not meet this requirement. Accordingly, the AJ did not err in dismissing Serrao's appeal for lack of jurisdiction.

## COSTS

Each party shall bear its own costs.

*AFFIRMED.*

PAULINE NEWMAN, Circuit Judge, dissenting.

I respectfully dissent.

### I

This appeal is from the MSPB's dismissal, for lack of jurisdiction, of an Individual Right of Action appeal taken by Robert Serrao from actions of his supervisor, Josephine Moran. Her actions were asserted to be in reprisal for his disclosures of her violations of law, mismanagement, and abuses of authority. These disclosures were made in agency grievances, and also to the Special Counsel, the Inspector General, and management officials.

The only issue is jurisdiction. The Board held that if whistleblowing disclosures were made in a grievance, the Whistleblower Protection Act did not apply. The Board ignored all of Mr. Serrao's asserted whistleblowing disclosures outside of the grievances, and did not comment on their existence. Thus the Board held that Mr. Serrao could not take an Individual Right of Action appeal to the Board. In so holding, the Board violated and misapplied Federal Circuit precedent, as well as its own precedent. This is the jurisdictional issue on appeal.

The panel majority, however, does not review this issue. Instead, the panel majority has decided the case *sua sponte* on an issue that was not relied on by the Board, not argued by any party, not supported by the record, and not before us. The opinion of the administrative judge, from which this appeal is taken, did not challenge the exhaustion of remedies before the Special Counsel. Neither side appealed the issue. The Board's brief as Respondent not only does not dispute this point, but affirmatively states that Mr. Serrao had completed this step. *See* Brief for Respondent Merit Systems Protection Board at 3 n. 2 (Sept. 18, 1995) ("He had previously sought corrective action from the Office of Special Counsel (OSC) as required by 5 U.S.C. § 1221. He filed his IRA appeal after the requisite 120 days had passed without action by OSC. 5 U.S.C. § 1214(a)(3)(B).") Mr. Serrao had

**9.** The February 22, 1995 letter from an attorney at OSC to Serrao's attorney confirming a conversation concerning Serrao's OSC complaint does not alter our conclusion. We view this letter as akin to a "subsequent characterization ... in [Serrao's] appeal to the Board" of the statements in the complaint. *Ward,* 981 F.2d at 526. Such a characterization does not change the complaint Serrao filed on March 10, 1994. *Id.*

filed two complaints with the OSC, plus supplementary communications whenever some new adverse event happened.

Indeed, the panel majority appears to have selected this ground without reference to the record, for the record supports the Board's recognition that the requisite administrative remedies were sought and that the requisite time had elapsed. Precedent requires that appellate review of an administrative decision be on the same ground as that considered by the administrative agency. The employee must "articulate with reasonable clarity and precision [before the OSC] the basis for his request for corrective action under the WPA." *Ellison v. Merit Sys. Protection Bd.,* 7 F.3d 1031, 1037 (Fed.Cir.1993); *accord Mintzmyer v. Department of Interior,* 84 F.3d 419, 422 (Fed.Cir.1996). We require reasonable clarity to "give the Office of Special Counsel sufficient basis to pursue an investigation which might have led to corrective action." *Knollenberg v. Merit Sys. Protection Bd.,* 953 F.2d 623, 626 (Fed.Cir.1992). The panel majority holds that Mr. Serrao's complaint did not clearly notify the Special Counsel of violations of § 2302(b)(8) because his complaints related only to § 2302(b)(9). However, Mr. Serrao's Special Counsel complaints refer not only to his grievances, but directly report the asserted wrongdoing. He also directly reported to Commerce Department management "all of the things that were going on in the NYFO concerning the SAIC and her abuse of authority, etc." Thus, as discussed more fully below, Mr. Serrao exhausted his administrative remedies and raised a jurisdictionally valid IRA appeal before the Board.

The court also holds that Mr. Serrao did not exhaust his administrative remedies in alleging reprisal as a result of Ms. Moran's belief that he was the anonymous informant in the 1991 Inspector General investigation. However, Mr. Serrao's March 10, 1994 complaint to the Special Counsel lists the accusations of being the informant as one of "the three stages that have taken place and why I believe there is justification to file a complaint with the OSC." Indeed, a February 22, 1995 letter from the Special Counsel indicates his understanding of Mr. Serrao's complaint:

> Mr. Serrao alleged that the agency officials took or threatened to take these actions [of reprisal] because he had filed a grievance against his supervisor, because he made disclosures of abuse of authority, gross mismanagement, and harassment, and because he was mistakenly identified as the source of a complaint to the agency's Office of Inspector General.

The panel majority curiously considers this letter "as akin to a 'subsequent characterization ... in [Serrao's] appeal to the Board' of the statements in the complaint," and cites *Ward v. Merit Systems Protection Board,* 981 F.2d 521, 526 (Fed.Cir.1992). In *Ward* an employee was prevented from self-serving recharacterization before the Board. This has not happened here. Moreover, there exists no better measure of the clarity of Mr. Serrao's complaint than the Special Counsel's letter describing his understanding of the complaint. The Special Counsel's explanation of his contemporaneous understanding is not the same as an employee's self-serving subsequent characterization of his complaint. The Special Counsel's letter leaves absolutely no doubt that Mr. Serrao sought the requisite corrective action for alleged reprisals stemming from whistleblowing disclosures that were made by Mr. Serrao or believed to have been made by Mr. Serrao.

The court's ruling is thus on an issue not relied on by the Board in its decision and not mentioned by the Board in its brief. Neither Mr. Serrao nor the Board could respond. Procedural due process requires that a party have an opportunity to respond to any new issue that the court deems dispositive, but that had been decided in the party's favor before the agency, and not appealed. *See Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976) (quoting *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 171–72, 71 S.Ct. 624, 648–49, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)) ("The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'")

**1580**

The panel majority's reliance on the exhaustion issue is not in accordance with the rule, rigorously applied by this court, that issues not raised before the Board can not be raised before us. *See, e.g., Frank v. Department of Transportation,* 35 F.3d 1554, 1559 (Fed.Cir.1994) ("we do not consider issues that were not raised in the proceedings below"); *Synan v. Merit Sys. Protection Bd.,* 765 F.2d 1099, 1101 (Fed.Cir.1985) ("Petitioner cannot raise before this court an issue which could have been raised below but which was not.") This accords with the requirement of administrative law that judicial review of agency action must be on the grounds on which the agency relied. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.")

[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.

*Securities & Exchange Comm'n v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947).

Further, the panel majority's ruling that the case was not properly before the Board for failure to exhaust the procedures before the Special Counsel is untenable for neither Petitioner nor Respondent appealed this aspect. They did not raise it, argue it, or even mention the relevant facts. The panel majority's dismissal without record or argument by the parties contravenes the Court's admonition that no litigant's complaint should be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

II

The Board summarized the jurisdictional issue before it as follows:

In an initial decision, an administrative judge found that the Board has no jurisdiction over Mr. Serrao's individual right of action appeal under the Whistleblower Protection Act of 1989, 5 U.S.C. § 1221, *because information disclosed in a grievance is not covered under 5 U.S.C. § 2302(b)(8).* The initial decision became the final decision of the Board when neither party filed a petition for review with the full Board pursuant to 5 C.F.R. § 1210.113.

(Emphasis added). That is the issue before us.

The Board held that reprisal for the filing of grievances is not appealable as an IRA appeal under the WPA, and did not discuss Mr. Serrao's whistleblowing either within or outside of the grievances. It is necessary to separate the statute that prohibits retaliation for the filing of grievances, 5 U.S.C. § 2302(b)(9), from the statute that prohibits retaliation for whistleblowing, 5 U.S.C. § 2302(b)(8). The Board was incorrect, as a matter of law, in ruling that retaliation for protected disclosures, if made in a grievance, is excluded from the protection of the Whistleblower Protection Act, without considering whether the same disclosures were made to the Special Counsel and others, and without considering its own recent precedent on this issue.

The Board's treatment of Mr. Serrao's whistleblowing disclosures as having been made only by grievance procedure is contrary to fact. When determining jurisdiction on the pleadings, disputed facts can not be found adversely to the complainant. *Ephraim v. Brown,* 82 F.3d 399, 401 (Fed.Cir.1996) ("Disputed facts, unless without color of plausible basis, are resolved in favor of the petitioner for jurisdictional purposes.")

In his grievances filed with Carl B. Ward, Chief of the Department of Commerce's eastern regional Human Resources Division, Mr. Serrao stated, *inter alia,* that Ms. Moran had conducted a harassment campaign against him over a two-year period, that Ms. Moran

was retaliating against him because she believed that he was the anonymous informant who told the Office of Inspector General that she was given passing scores on firearms tests that she did not pass, that she misused sick leave and the telephone, and that she had obstructed justice by ordering him to close out an undercover investigation of illegal exports in retaliation for his refusal to allow her to participate. While these grievances were pending, Mr. Serrao filed with the Special Counsel a complaint of whistleblowing reprisal, stating that Ms. Moran had acted in reprisal against him because she believed that he was the informant who blew the whistle to the Inspector General charging her with fraudulent passing of firearms tests and abuse of sick leave and the telephone. There were several exchanges with the Special Counsel, in which Mr. Serrao reported "additional acts of retaliation."

Mr. Serrao states that the disclosures of misfeasance, illegality, and retaliation that he made to Mr. Ward in his grievance letters of March 23 and 26, 1994 are protected whistleblower activity as defined by 5 U.S.C. § 2302(b)(8), and are not excluded from the IRA appeal process because he exercised the grievance right, protected in 5 U.S.C. § 2302(b)(9). He states that he made the same disclosures to the Special Counsel and others, outside of the grievance process.

Section 2302(b)(8) prohibits retaliation for whistleblowing disclosures, however they were made—including disclosures made to the Special Counsel, the Inspector General, or persons designated within the agency to receive such disclosures. This does not exclude persons designated to receive employee grievances and process them through agency management, as in the Commerce Department's internal grievance process. In addition, reprisal for the whistleblowing disclosure that was made anonymously to the Inspector General is not insulated from scrutiny. The Board has held that an employee who did not engage in whistleblowing activity may nonetheless be covered by the Whistleblower Protection Act when a personnel action is taken against him in retaliation for the mistaken belief that he has engaged in whistleblowing activity. *Special Counsel v.*

*Department of the Navy,* 46 M.S.P.R. 274, 278 (1990).

The Board incorrectly perceived the statute when it held that all "disclosures made within grievance proceedings are covered by 5 U.S.C. § 2302(b)(9) rather than § 2302(b)(8)." Section 2302(b)(9) relates to reprisal for the act of filing a grievance, and is independent of whether the grievance included protected whistleblowing disclosures. In turn, § 2302(b)(8) gives the protection of the Whistleblower Protection Act to whistleblowing disclosures, without limiting where or how they were made. This reading gives full scope to congressional intent, and avoids the loopholes that the Board and courts have inserted into the statutes. The statutes are:

§ 2302(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—

\*     \*     \*     \*     \*     \*

(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—

(A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or

(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,

if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs.

(B) any disclosure *to the Special Counsel, or to the Inspector General* of an agency *or another employee designated by the head of the agency to receive such disclosures,* of information which the employee or applicant reasonably believes evidences—

(i) a violation of any law, rule, or regulation, or

(ii) gross mismanagement, a gross waste of funds, an abuse of authority,

or a substantial and specific danger to public health or safety;

. . . .

(9) take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of—

(A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation;

(B) testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A);

(C) cooperating with or *disclosing information to the Inspector General* of an agency, *or the Special Counsel,* in accordance with applicable provisions of law; . . . .

(Emphases added).

In *Ellison v. Merit Systems Protection Board,* 7 F.3d 1031, 1035 (Fed.Cir.1993), this court considered a situation wherein the facts disclosed in a grievance "establish the type of fraud, waste, or abuse that the WPA was intended to reach," and held that the protection of the WPA under 5 U.S.C. § 2302(b)(8) is not eliminated when such facts are disclosed both in a grievance and outside of the grievance process. The Board argues that *Ellison* is limited to situations wherein protected information is also disclosed outside of the grievance, and that *Spruill v. Merit Systems Protection Board,* 978 F.2d 679 (Fed. Cir.1992) requires that reprisal when a grievance is filed, whatever the information disclosed in the grievance, can not be remedied under the Whistleblower Protection Act.

In *Spruill* the EEOC complaint did not contain whistleblowing disclosures as defined in § 2302(b)(8); the complaint was a discrimination complaint, not a whistleblowing disclosure. 978 F.2d at 692 & n. 17. Thus the court held that Spruill's filing of an EEOC complaint was not an act of whistleblowing, and that any retaliation for filing the complaint could be remedied in the EEOC proceeding. However, if a grievance contains a whistleblowing disclosure and reprisal ensues, the remedies accorded reprisal for

whistleblowing disclosures remain available under 5 U.S.C. § 2302(b)(8)(B). As explained in *Ellison,* the purpose of the WPA is to "protect[ ] federal employees who disclose government illegality, waste, and corruption . . .; it was not intended to discourage employees who are subject to prohibited personnel practices from also seeking redress through other authorized means, such as a grievance process." 7 F.3d at 1035; *see also* 5 U.S.C. § 1201 Notes (the purpose of the WPA is "to strengthen and improve protection for the rights of Federal employees, to prevent reprisals, and to help eliminate wrongdoing within the Government").

The Board applied this precedent in *Bump v. Department of the Interior,* 64 M.S.P.R. 326 (1994). *Bump* was decided after *Fisher v. Department of Defense,* 52 M.S.P.R. 470 (1992), a case on which the panel majority today relies. In *Bump* the Board explained that information included in a grievance letter may also be a whistleblowing disclosure under § 2302(b)(8), and that an employee's recourse to the agency's grievance procedure does not remove the protection of the WPA from whistleblowing disclosures. *See* 64 M.S.P.R. at 332 ("The fact that the appellant filed a grievance action . . . does not in and of itself disqualify him from seeking corrective action under the WPA.")

Although the Board now argues that *Bump* should be limited to that case, Mr. Serrao's case highlights the need for clarity in this law. The Board in its decision cited a large number of Board decisions earlier than *Bump* and inconsistent with *Bump.* Although the Board acknowledges that in *Bump* the employee made disclosures to the Special Counsel as well as by grievance, the Board does not explain why it has not followed *Bump* in Mr. Serrao's case. It is essential that the Board maintain consistency in application of its own and Federal Circuit rulings, in serving the federal employees who depend on the Board for just resolution of the employment matters assigned to it.

Mr. Serrao's disclosures on their face relate to illegality, gross mismanagement, and abuse of authority, the subject matter of

§ 2302(b)(8).[1]  The Board's dismissal of the IRA appeal on the ground that the filing of the grievances divested the Board of jurisdiction was incorrect.  Mr. Serrao's disclosures were *prima facie* whistleblowing as defined in 5 U.S.C. § 2302(b)(8), and were made in forums in addition to their inclusion in his grievances.  He is entitled to a hearing on the merits of his IRA appeal.

The panel majority does not reach the merits of Mr. Serrao's claim.  It may be that his disclosures were in fact without substance, or that the disciplinary actions were in fact untainted by reprisal for whistleblowing.  No findings on the merits were made by the Board.  I would vacate the dismissal and remand to the Board for that purpose.  *See Barnes v. Office of Personnel Management*, 980 F.2d 708, 714 (Fed.Cir.1992) ("Our case law requires that the Board make specific findings of fact, and we often vacate and remand where the Board fails to do so.")

1. The Board argues otherwise on this appeal, for the first time in the proceedings.  The Board's dismissal did not mention this point.  *Prima facie*, the disclosures of obtaining false certification to carry firearms, obstructing an official investigation, and abusing sick leave, are within the statutory categories.  *See Horton v. Department of the Navy*, 66 F.3d 279, 283 (Fed.Cir.1995) ("The statute requires only that the whistleblower had a reasonable belief that, for example, a rule or regulation had been violated, in order for the disclosure of such violations to be protected."), *cert. denied*, —— U.S. ——, 116 S.Ct. 1271, 134 L.Ed.2d 218 (1996).  Thus the jurisdictional requirement must be viewed as met, and the Board's argument is misplaced in the context of jurisdiction.