Robert E. FORREST, Petitioner,

v.

UNITED STATES POSTAL SERVICE,
Respondent.

No. 02–3183.

United States Court of Appeals,
Federal Circuit.

March 5, 2003.

Before MAYER, Chief Judge,
NEWMAN, and GAJARSA, Circuit
Judges.

DECISION

PER CURIAM.

Robert E. Forrest ("Forrest") petitions for review of the decision of the Merit Systems Protection Board ("Board"), which entered two decisions against him: the first regarding his request for Law Enforcement Officer ("LEO") status, the second regarding his retaliation claim against the United States Postal Service ("USPS"). *Forrest v. United States Postal Serv.*, Docket No. PH–0831–99–0135–I–2 (Mar. 5, 2001) (petition for review denied Jan. 14, 2002). We *affirm-in-part* the decision regarding Forrest's LEO status. We *vacate-in-part* and *remand* with in-

structions to dismiss Forrest's retaliation claim for lack of jurisdiction.

## BACKGROUND

Forrest is a Postal Police Officer ("PPO") at the Baltimore, Maryland Main Post Office ("MPO"). He has been a PPO for approximately twenty-five years. Currently, Forrest serves as a Postal Police Officer Supervisor ("PPOS"), a position to which he was promoted in 1979. The position description for the PPOS requires that a PPOS "supervises, on an assigned tour, a small- to medium-size security force in the protection of mails, life, vehicles, and postal property at a postal facility and surrounding areas." Some additional specific duties of a PPOS are noteworthy:

Makes arrests and testifies in court on law violations within the assigned authority.

Exercises supervisory responsibility for the proper use of firearms, badges, keys, alarm systems, and related security equipment.

\* \* \* \* \* \*

Has frequent contact with the general public resolving complaints and responding to inquiries. Has occasional contact with representatives of government agencies housed in the postal facility in regard to security problems. Has regular contact with representatives of other law enforcement agencies.

The position description for the PPO requires that a PPO "performs a variety of duties pertaining to the security of postal buildings, personnel, property, mail, and mail-in-transit in support of the postal security program." Additional duties include:

Carries a firearm and exercises standard care required by the Inspection Service on firearms and the use of rea-

sonable force. Maintains assigned firearms in good condition.

\* \* \* \* \* \*

Performs patrol duty, as assigned, on foot or by motor vehicle to maintain order and safeguard the facility, property, and personnel; ensures the application of security measures in mailhandling areas.

Maintains contact with other security force personnel; responds to emergencies and other conditions, including burglaries and hold-ups, requiring immediate attention.

Makes arrests and testifies in court on violations within assigned authority.

There is seemingly no dispute that Forrest performed these and other duties adequately.

Forrest asserts that his duties as a PPOS, and additional duties performed that are beyond his official position description, warrant a finding that he is entitled to LEO status. The additional duties that Forrest points to include the interrogation of witnesses and giving of *Miranda* warnings to criminal suspects, when necessary. He also contends that he has frequent contact with suspected criminals, and is on call twenty-four hours per day. He equates the activities that he regularly performs with substantial "front-line" law enforcement duties. The Administrative Judge ("AJ"), in her initial decision, found that based on the entire record, Forrest was not entitled to LEO status. This decision was made final by the Board on January 14, 2002, when Forrest's petition for review was denied.

In addition to his arguments that he is entitled to LEO status, Forrest also contends that he was the victim of reprisals from the USPS resulting from his request to be given LEO status. These actions include, at a minimum, a change of his

shift, changes in duties associated with his position, and involuntary assignment to a different postal facility. The AJ considered Forrest's arguments in her initial decision but found that Forrest failed to meet his burden of proof that the agency's actions were retaliatory.

## DISCUSSION

■ This court must affirm the Board's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); *Cheeseman v. Office of Pers. Mgmt.*, 791 F.2d 138, 140 (Fed.Cir. 1986). As relevant here, a Board decision on factual matters must be sustained unless it is unsupported by substantial evidence. *Hayes v. Dep't of Navy*, 727 F.2d 1535, 1537 (Fed.Cir.1984).

A person is entitled to LEO service credit when that person is "separated from the service after becoming 50 years of age and completing 20 years of service as a law enforcement officer...." 5 U.S.C. § 8336(c)(1) (2000). A LEO is defined by statute to mean "an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, including an employee engaged in this activity who is transferred to a supervisory or administrative position." 5 U.S.C. § 8331(20) (2000). LEOs engaged in "detention" are employees "whose duties in connection with individuals in detention suspected or convicted of offenses against the criminal laws of the United States ... require frequent ... direct contact with these individuals in their detention, direction, supervision...." *Id.* Chapter 5 of the Code of Federal Reg-

ulations provides that "[d]etention duties means duties that require *frequent direct contact* in the detention, direction, supervision, inspection ... of individuals suspected or convicted of offenses against the criminal laws of the United States...." 5 C.F.R. § 831.902 (2002) (emphasis added).

"This court has indicated that § 8331(20) must be strictly construed." *Ryan v. Merit Sys. Prot. Bd.*, 779 F.2d 669, 672 (Fed. Cir.1985). Several considerations bear on the question of whether or not a particular employee qualifies as a LEO. To qualify, an employee must (1) have frequent, direct contact with suspected criminals; (2) be authorized to carry a firearm; (3) interrogate witnesses and suspects, and give *Miranda* warnings when appropriate; (4) work for long periods of time without breaks; (5) be on call twenty-four hours a day; and (6) maintain a level of physical fitness. *Bingaman v. Dep't of the Treasury*, 127 F.3d 1431, 1436 (Fed.Cir.1997). No single factor is essential or dispositive, nor is the list exclusive or exhaustive. *Id.* These considerations do, however, "capture[ ] the essence of what Congress intended" in enacting 5 U.S.C. § 8331. *Id.* "The *Bingaman* considerations are relevant to determining whether an employee is a [LEO] because they are relevant to determining whether an employee's duties are primarily criminal investigation, apprehension, or detention." *See Hall v. Dep't of the Treasury*, 264 F.3d 1050, 1056 (Fed. Cir.2001).

As a threshold matter, Forrest's investigative duties do not rise to a level that warrants a finding that he is, in fact, a LEO. "Investigations will involve searching crime scenes for clues and evidence, interviewing witnesses, following leads, analyzing and evaluating evidence, locating suspects and making apprehensions." *Fitzgerald v. Dep't of Def.*, 80 M.S.P.R. 1, 24 (1998). Forrest's investigations are

generally performed by computer searches, and information obtained from those searches is typically forwarded to a Postal Inspector for investigation. He monitors cases and issues incident reports regarding off-duty arrests of postal employees to the Labor Relations Department ("LRD"). Off-duty arrests of postal employees can lead to administrative action against the employee, but the LRD has no authority to investigate criminal offenses. These types of investigations, while likely important to the overall operation of the postal facility, do not meet the criteria of a law enforcement-type investigation contemplated in *Fitzgerald.*

Regarding the first *Bingaman* consideration, the fact that the Baltimore, Maryland MPO is located in a high crime area and Forrest confronts criminals while on patrol is not enough to establish that he has "frequent, direct contact" with criminal suspects. *See Hall,* 264 F.3d at 1057 (finding that contact with people with criminal records at a high-crime seaport was not equivalent to investigations of criminal suspects). In further support of his position, Forrest argues that he has removed employees from the work floor after identifying an outstanding warrant on a computerized system. Once removed, he either detained those employees until the arrival of law enforcement authorities, or on occasion, transported those employees to the local police station. From the record, however, it is clear that these incidents were limited, and therefore, do not meet the "frequent, direct contact" requirement.

Forrest does, however, meet the second *Bingaman* factor, as he is authorized to, and does, carry a firearm. It is interesting to note, however, that while he can carry his firearm when leaving postal property while *on duty,* he is *not* authorized to carry his weapon once he is *off duty.*

Forrest's responsibilities regarding the third *Bingaman* factor, i.e., the interrogation of witnesses and criminal suspects, are also lacking the substance necessary to establish them as equivalent to the duties of a LEO. The Board found that Forrest's interrogations were limited in scope and amounted to essentially preliminary work. Investigations resulting from these interrogations were reported to the Duty Postal Inspector Officer, who ultimately completed the investigation. Preliminary interrogations such as these, while important to a complete criminal investigation, appear to be too limited to warrant a finding that Forrest is a LEO, especially considering that the bulk of the investigation is ultimately passed on to a different officer.

We are even less persuaded that Forrest meets the other *Bingaman* factors. The requirement that Forrest provide his supervisors with his home telephone number does not indicate that he is on call twenty-four hours a day, nor is there anything to support this contention. The fact that Forrest is not allowed to exercise his authority even within the postal facility once his tour of duty has ended also cuts against his assertion that he must be on call to perform at all times. The Board also found the requirement that Forrest be subject to fitness-for-duty examinations was not the equivalent of maintaining a certain level of fitness. The Board's findings were supported by substantial evidence, and thus, it was correct in finding that Forrest was not entitled to LEO status.

 Regarding Forrest's retaliation claim, we must first consider whether the Board had jurisdiction to decide the issue. The jurisdiction of the Board is not plenary. Rather, it is limited to those matters specifically entrusted to the Board by stat-

ute or regulation. *See* 5 U.S.C. § 7701(a)(1) (2000); *Serrao v. Merit Sys. Prot. Bd.*, 95 F.3d 1569, 1573 (Fed.Cir. 1996). A petitioner has the burden of establishing Board jurisdiction by a preponderance of the evidence. 5 C.F.R. § 1201.56(a)(2) (2002). Jurisdiction is a question of law that we review *de novo*. *Serrao*, 95 F.3d at 1573.

Although the statutory section under which Forrest brought his reprisal claim is not explicitly noted in the record, it appears that the AJ analyzed the claim under 5 U.S.C. § 2302(b)(8), which relates primarily to prohibited agency actions taken in retaliation for whistleblowing. The facts indicate, however, that the agency's alleged retaliatory actions were brought as a response to Forrest's exercise of his legal rights. Forrest does not point to any improper action taken *before* he made his claim for LEO status. Indeed, Forrest indicates in his brief that the agency's actions "were at least partially motivated by retaliation for the Appellant's efforts to gain LEO status." Thus, Forrest's claim should have been brought properly under 5 U.S.C. § 2302(b)(9)(A), since the alleged retaliatory action taken by the agency against him was because of his "exercise of any appeal ... granted by any law, rule, or regulation." *See* 5 U.S.C. § 2302(b)(9)(A) (2000). There are no indications that the alleged retaliations occurred because of any protected whistleblowing activities on the part of Forrest, therefore 5 U.S.C. § 2302(b)(8) is inapplicable, and the Board's jurisdiction to hear the reprisal claim under § 2302(b)(8) does not exist. *See* 5 U.S.C. § 1221(a) (2000).

"Except in a case in which an employee ... has the right to appeal directly to the [Board] under any law, rule, or regulation, any such employee ... shall seek corrective action from the Special Counsel before seeking corrective action from the Board."

5 U.S.C. § 1214(a)(3) (2000). There is nothing in the record to indicate that Forrest has ever sought corrective action from the Special Counsel (i.e., the United States Office of Special Counsel). Therefore, the Board has no jurisdiction over Forrest's retaliation claim as he has not exhausted his administrative remedies.

We accordingly affirm the Board's decision denying Forrest's claim for LEO status, and vacate and remand regarding Forrest's retaliation claim with instructions to dismiss the retaliation claim for lack of jurisdiction.