**Reginald L. CYRUS, Petitioner,**

v.

**DEPARTMENT OF THE AIR FORCE, Respondent.**

No. 03–3006.

United States Court of Appeals, Federal Circuit.

DECIDED: Oct. 31, 2003.

Before MAYER, Chief Judge, CLEVENGER, and SCHALL, Circuit Judges.

## DECISION

SCHALL, Circuit Judge.

Reginald L. Cyrus petitions for review of the final decision of the Merit Systems Protection Board ("MSPB" or "Board") that dismissed his individual right of action ("IRA") appeal. *Cyrus v. Dep't of the Air Force*, No. SF–1221–01–0172–W–1, 92 M.S.P.R. 226 (M.S.P.B. Aug.5, 2002) (*"Final Decision"*). Mr. Cyrus sought corrective action for personnel actions taken by the Department of the Air Force ("Air Force"), which he alleged were in retaliation for a series of protected statements made during his employment. Mr. Cyrus claimed that the Air Force's actions violated the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302(b)(8). We *affirm in-part, reverse in-part,* and *remand.*

## DISCUSSION

### I.

Mr. Cyrus is a civilian computer specialist employed at Edwards Air Force Base ("Edwards AFB") in California. He alleges that protected disclosures he made in 1994, 1995, and 1999 caused negative personnel actions–pay raise denials and a reassignment–to be taken against him.

According to Mr. Cyrus, his first protected disclosure occurred in 1994, when he verbally reported to his supervisor that a colleague was improperly drawing an Air Force salary while working full time in the private sector (the "timekeeping disclosure" or the "1994 disclosure"). In 1995, Mr. Cyrus contends, he made a second protected disclosure, suggesting that Air Force procedures and federal regulations were violated in the advertising and hiring actions of the B1 Support group manager (the "B1 disclosure" or the "1995 disclosure"). Finally, Mr. Cyrus claims that, in 1999, he criticized Edwards AFB's adoption of the Contribution-based Compensa-

tion and Appraisal System ("CCAS"), a pay system in which employees are paid based on their contribution to the overall mission of the base, rather than on individual performance. CCAS utilizes a panel of several members ("pay panel") to evaluate whether an employee is "above the rail," such that his or her current pay rate exceeds his or her contribution to the Air Force base. If the employee is judged overcompensated, he or she is denied a pay raise. Mr. Cyrus objected to the new compensation system. Through a series of letters to Edwards AFB leadership (the "1999 disclosures"), he questioned the legal authority of the pay panel to deny raises and the value of the CCAS program to taxpayers.

In January of 2000, Mr. Cyrus's performance was evaluated by a CCAS pay panel, which determined that his contribution relative to rate of pay was "above the rail." He was therefore denied a base pay increase of 3.8% and, later, a "step increase" in his pay rate. In May of 2000, Mr. Cyrus's position was eliminated and he was reassigned to a new unit. He remained a computer specialist, however, and his pay rate and grade were not reduced by the reassignment. Mr. Cyrus nonetheless complains that the reassignment was disadvantageous, and was in part in retaliation for his protected disclosures.

Following the pay raise denial and his reassignment, Mr. Cyrus filed a complaint with the Office of Special Counsel ("OSC"). He alleged that the 1994, 1995, and 1999 disclosures led to his unfavorable CCAS score, the resulting pay raise denial, and ultimately, the elimination of his position and reassignment. After conducting an investigation, OSC found that although the timekeeping disclosure and the B1 disclosure were probably protected under the WPA, the passage of several years be-

tween the disclosures and the personnel actions at issue sufficiently severed any causal relationship. OSC did not find the 1999 disclosures to be protected disclosures under the WPA.

Mr. Cyrus timely appealed to the Board. On October 3, 2001, the administrative judge ("AJ") to whom the appeal was assigned issued an initial decision in the case. *Cyrus v. Dep't of the Air Force*, No. SF–1221–01–0172–W–1 (M.S.P.B. Oct.3, 2001) (*"Initial Decision"*). The AJ ruled that the 1999 disclosures did not constitute protected disclosures as defined by the WPA; instead, he held, they merely "amounted to a debate of law, grounded in facts that were widely known." *Id.* at 17. While the AJ did suggest that the 1994 and 1995 disclosures, if proven, would constitute protected disclosures, *Id.* at 16, he held that Mr. Cyrus had failed to exhaust his remedies before the OSC with respect to the 1994 disclosure and therefore could not proceed on an IRA appeal with respect to that disclosure. *Id.* at 18–20. The AJ ruled that Mr. Cyrus had not disclosed sufficient information to permit OSC to conduct an investigation. Thus, the time-keeping claim was dismissed for want of jurisdiction for failure to exhaust.

This dismissal left the B1 disclosure as the only remaining issue before the AJ. Because Mr. Cyrus had not convincingly shown that the officials taking the personnel action in 2000 possessed either actual or constructive knowledge of the 1995 disclosure, the AJ held that Mr. Cyrus had not established that the disclosure contributed to any of the personnel actions at issue. *Id.* at 25–26.

The AJ's Initial Decision became the final decision of the MSPB when the Board denied Mr. Cyrus's petition for review for failure to meet the criteria for review set forth at 5 C.F.R. § 1201.115. *See Final Decision*, at 1–3. An appeal to this court followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

II.

We must affirm the Board's decision unless we find that it was (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Serrao v. Merit Sys. Prot. Bd.*, 95 F.3d 1569, 1573 (Fed.Cir. 1996).

■ Mr. Cyrus challenges the Board's decision in connection with all of his alleged protected disclosures. We affirm the Board's ruling that the 1999 disclosures did not meet the requirements for protected disclosures under the WPA. We also affirm the ruling that the 1995 disclosure, even if protected, did not cause or contribute to the personnel actions taken against Mr. Cyrus in 2000. The Board's decision on these points is free of legal error and supported by substantial evidence. For the reasons that follow, however, we reverse the Board's ruling that it lacked jurisdiction over the appeal insofar as it related to the 1994 disclosure.

■ We agree that, in order for the Board to have jurisdiction, Mr. Cyrus must have exhausted his administrative remedies by presenting the 1994 disclosure to OSC for a preliminary investigation. *See Initial Decision*, at 7–8 (citing *Ward v. Merit Sys. Prot. Bd.*, 981 F.2d 521, 526 (Fed.Cir.1992)). Where we differ with the Board is in its conclusion that the exhaustion requirement was not met with respect to that disclosure. It is clear from the record that Mr. Cyrus did exhaust his OSC remedy and that, accordingly, there was no bar to the Board's exercise of jurisdiction. On May 15, 2000, Mr. Cyrus

wrote to OSC: "In late 1994 and 1995 I made two verbal reports to Mr. Luke Pope for his agency to investigate. The first item involved a person's time at work. . . ." Upon completion of its investigation, in its notice to Mr. Cyrus on the closing of his file, OSC specifically acknowledged the timekeeping disclosure, and noted that it likely met the requirements for a protected disclosure.

The foregoing exchange between Mr. Cyrus and OSC makes it clear that Mr. Cyrus properly exhausted his administrative remedies. We therefore reverse the decision of the Board that it lacked jurisdiction insofar as Mr. Cyrus's appeal related to the 1994 disclosure. The case is remanded to the Board so that it may address Mr. Cyrus's allegations with respect to the timekeeping disclosure.