**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2014 MSPB 83**

Docket No. SF-1221-13-0574-W-2

**Robert M. Miller,**

**Appellant,**

**v.**

**Federal Deposit Insurance Corporation,**

**Agency.**

November 6, 2014

Robert M. Miller, San Francisco, California, pro se.

Thomas J. Sarisky, Arlington, Virginia, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1      The appellant has filed a petition for review of an initial decision that dismissed his individual right of action (IRA) appeal for lack of jurisdiction because, among other things, his claim of reprisal for disclosing information during an internal grievance process was not a matter that could be adjudicated in this IRA appeal, regardless of whether the pertinent provisions of the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, 126 Stat. 1465, applied retroactively.  For the following reasons, we

DENY the petition for review, AFFIRM the initial decision as modified, and DISMISS this appeal for lack of jurisdiction.

BACKGROUND

¶2    In *Miller v. Federal Deposit Insurance Corporation*, MSPB Docket No. SF-3443-12-0301-I-1, Final Order (June 26, 2013), the Board forwarded the appellant's petition for review to the Western Regional Office for docketing as an IRA appeal, and this appeal followed. *See Miller v. Federal Deposit Insurance Corporation*, MSPB Docket No. SF-1221-13-0574-W-1, Initial Appeal File (W-1 IAF), Tab 1. As explained in more detail below, all of the material events in this matter occurred before the relevant provisions of the WPEA took effect on December 27, 2012. *See* WPEA § 202. An IRA appeal is authorized by statute only in certain reprisal cases as designated in 5 U.S.C. § 1221(a). Prior to the WPEA, an eligible individual's entitlement to seek corrective action from the Board in an IRA appeal was limited to covered personnel actions taken or proposed to be taken as a result of a prohibited personnel practice (PPP) described in 5 U.S.C. § 2302(b)(8), i.e., retaliation for whistleblowing. *See* 5 U.S.C. § 1221(a) (2011); *see also* 5 C.F.R. § 1209.4(b) (defining "whistleblowing"). The WPEA extended the IRA appeal right in section 1221(a) to include not only PPPs described in 5 U.S.C. § 2302(b)(8) but also PPPs described in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D), as amended by the WPEA. WPEA § 101(b)(1)(A). The administrative judge dismissed this appeal without prejudice to refiling pending the Board's decision in *Hooker v. Department of Veterans Affairs*, 120 M.S.P.R. 629 (2014), regarding whether the expanded IRA appeal provisions in the WPEA should be applied retroactively. *See* W-1 IAF, Tab 8, Initial Decision.

¶3    After this appeal was refiled, the administrative judge issued an order to show cause explaining that, in *Hooker*, 120 M.S.P.R. 629, ¶¶ 8-15, the Board

determined that the new IRA appeal right in section 101(b)(1)(A) of the WPEA pertaining to the PPPs described in 5 U.S.C. § 2302(b)(9)(B) did not apply retroactively to a Board appeal that was pending when the WPEA was enacted.[1] *Miller v. Federal Deposit Insurance Corporation*, MSPB Docket No. SF-1221-13-0574-W-2, Initial Appeal File (W-2 IAF), Tab 3.  The administrative judge noted that the analysis in *Hooker* "appears equally applicable" to a claim based on the PPPs described in 5 U.S.C. § 2302(b)(9)(A).  *Id.* at 3 n.2.  The administrative judge therefore ordered the appellant to show cause why his appeal should not be dismissed for lack of jurisdiction.  *Id.* at 4.

¶4        After the appellant responded to the order, W-2 IAF, Tab 4, the administrative judge issued an initial decision that dismissed the IRA appeal for lack of jurisdiction, W-2 IAF, Tab 6, Initial Decision (ID).  The administrative judge found that, under long-standing precedent of the Board and the U.S. Court of Appeals for the Federal Circuit, the alleged reprisal for the appellant's grievance activity and for disclosing information as a part of that process could be a PPP as described in 5 U.S.C. § 2302(b)(9) but not as described in 5 U.S.C. § 2302(b)(8).  *See* ID at 6.  The administrative judge further found that all the material events in this case occurred prior to the effective date of the WPEA and that, following *Hooker*, the extension of IRA appeal rights in the WPEA was not to be given retroactive effect to reprisal claims based on certain activity described in 5 U.S.C. § 2302(b)(9).  *See* ID at 6-8.  The administrative judge further concluded that, even if these WPEA provisions applied retroactively, the

---

[1] As amended by the WPEA, 5 U.S.C. § 2302(b)(9)(B) states that it is a PPP to take or fail to take, or threaten to take or fail to take, any personnel action against any employee because of "testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A)(i) or (ii)."  Subparagraphs (A)(i) and (ii) refer to the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation—(i) with regard to remedying a violation of paragraph (8), or (ii) other than with regard to remedying a violation of paragraph (8).

appellant's claims would be covered under 5 U.S.C. § 2302(b)(9)(A)(ii), as amended by the WPEA, and as such would still not be among the enumerated grounds for an IRA appeal. *See* ID at 8 (citing *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013)).[2] The administrative judge also found that, to the extent that the appellant was raising allegations of reprisal for separate whistleblowing disclosures that occurred outside of the context of the internal grievance process, the appellant failed to prove that he had exhausted his administrative remedy with the Office of Special Counsel (OSC) regarding such claims and thus, by law, they could not be a basis for Board jurisdiction over this IRA appeal. ID at 4-5.

¶5 The appellant has filed a petition for review, the agency has filed a response, and the appellant has filed a reply. *See* Petition for Review (PFR) File, Tabs 1, 3-4. On review, the appellant challenges the administrative judge's jurisdictional analysis. PFR File, Tab 1 at 8-14. He further argues that the administrative judge improperly denied his motion to compel discovery and his motion to strike certain information from the record. *Id.* at 8, 14. He also includes an agency draft anti-harassment policy that may have been disseminated to employees after the close of the record below. *See id.* at 11-12, 17-26.

---

[2] As an additional basis for finding a lack of jurisdiction over the appellant's (b)(9) claims, the administrative judge found that, under pre-WPEA law, the appellant was an employee of a government corporation rather than an "agency" as defined at 5 U.S.C. § 2302(a)(2)(C)(i) (2011), and thus was excluded from coverage under 5 U.S.C. § 2302 except for a claim arising under subsection (b)(8), ID at 6 & n.8 (citing *Snead v. Pension Benefit Guaranty Corporation*, 74 M.S.P.R. 501, 502-03 (1997); *Dockery v. Federal Deposit Insurance Corporation*, 64 M.S.P.R. 458, 460-62 (1994)). The WPEA amended 5 U.S.C. § 2302(a)(2)(C)(i) to add language regarding section 2302(b)(9)(A)(i), (B), (C), and (D). *See* WPEA § 101(b)(1)(B). Because we find that the Board lacks jurisdiction for the reasons set forth in this Opinion and Order, we do not reach the administrative judge's alternative analysis.

ANALYSIS

<u>The administrative judge properly concluded that the appellant exhausted his remedies with OSC regarding claims of reprisal for his grievance activities, but he did not seek corrective action from OSC regarding his claims of reprisal for disclosures or activities outside of the grievance process.</u>

¶6  The first element of Board jurisdiction over an IRA appeal is exhaustion by the appellant of his administrative remedies before OSC. *See* 5 U.S.C. §§ 1214(a)(3), 1221(a); *see also Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 4 (2014). Specifically, under 5 U.S.C. § 1214(a)(3), an employee is required to "seek corrective action from [OSC] before seeking corrective action from the Board" through an IRA appeal. To satisfy this requirement, an appellant must articulate to OSC the basis for his request for corrective action "with reasonable clarity and precision." *Ellison v. Merit Systems Protection Board*, 7 F.3d 1031, 1037 (Fed. Cir. 1993); *see Ward v. Merit Systems Protection Board*, 981 F.2d 521, 526 (Fed. Cir. 1992). Although an appellant may add further detail to his claims before the Board, *see Briley v. National Archives & Records Administration*, 236 F.3d 1373, 1378 (Fed. Cir. 2001), the appellant must first make a reasonably clear and precise claim with OSC, *see, e.g.*, *Mintzmyer v. Department of the Interior*, 84 F.3d 419, 422 (Fed. Cir. 1996).

¶7  The administrative judge found that the appellant exhausted his administrative remedies with OSC regarding his claims of reprisal for disclosures made during steps 1, 2, and 3 of the grievance process. ID at 5. The record fully supports this finding. *See* W-1 IAF, Tab 5 at 64-76 (OSC complaint), 13-21 (step 1 grievance dated May 29, 2011), 22-40 (step 2 grievance dated July 22,

2011), 41-57 (step 3 grievance dated September 8, 2011).[3]  For instance, the appellant's OSC complaint specifically identifies these three grievances as the alleged disclosures at issue.  *Id.* at 68, 70-72.  Further, he repeatedly made narrative assertions on his OSC complaint form that he made his disclosures in his grievances.  *See id.* at 67 ("On May 29[th], I filed a grievance with the FDIC for violations of law, regulation, EEOC guidance, FDIC policies, and the collective bargaining agreement."), 73 ("I filed a grievance for violation of law, regulation, guidance, and the collective bargaining agreement."), 74 ("In the grievance, I accused [my first-line supervisor] and the FDIC generally of violating the law and my rights.").  Thus, we find that the appellant satisfied the exhaustion requirement of 5 U.S.C. § 1214(a)(3) regarding his allegations concerning reprisal for his grievance activity and disclosures of information in that context.

¶8      In briefing the jurisdictional issue before the administrative judge, the appellant claimed that he also suffered reprisal for making certain disclosures outside of the grievance process.  Specifically, he referenced his May 26, 2011 email to the agency Ombudsman, W-2 IAF, Tab 4 at 10, 18-19, and his emails to the agency Acting Chairman and/or his Chief of Staff beginning on February 7, 2012, concerning "FDIC Values, Cultural Change, [and] Merit Systems Principles," W-1 IAF, Tab 5 at 8, 11, 58-63; W-2 IAF, Tab 4 at 10, 20-28.  There is no evidence that the appellant informed OSC of these communications with the

[3] Although the appellant's OSC complaint misstated the date of his step 3 grievance as July 22, 2011, *see* W-1 IAF, Tab 5 at 72, it is clear from context that he was referring to disclosures made during his step 3 grievance, *see id.* at 72-73, which was filed on September 8, 2011, *id.* at 41, and was the subject of a hearing before a Deputy Director on September 21, 2011, *id.* at 8, 68.  Although the appellant's OSC complaint did not explicitly refer to either of these September dates, we find that his complaint was clear enough to inform OSC that he was seeking corrective action for disclosures made in his written step 3 grievance and during the hearing in that matter on September 21, 2011.  We modify the initial decision to the extent that the administrative judge found otherwise.  *See* ID at 5 n.7.

agency Ombudsman, Chairman, or Chief of Staff, and these communications are not mentioned in his OSC complaint. *See* W-1 IAF, Tab 5 at 64-76. In contrast, his OSC complaint described in detail his grievance activity, which was the core of the complaint. *See supra* ¶ 7.

¶9 On review, the appellant does not argue that he raised with OSC his communications with the Ombudsman, Chairman, or Chief of Staff. Instead, he asserts that he generally "made reasonable attempts" to exhaust with OSC and that "[i]t simply does not matter whether [he] notified the OSC that he had also made disclosures outside the grievance process" because OSC had already determined that it would terminate an investigation into his allegations. PFR File, Tab 1 at 14. He further speculates that, if OSC had chosen to interview him, it could have determined whether there were disclosures outside of the grievance process, other types of personnel actions, or other covered disclosures. PFR File, Tab 4 at 12-13. We find these arguments unavailing.

¶10 Seeking corrective action with OSC is an important statutory prerequisite to an IRA appeal before the Board. *See* 5 U.S.C. § 1214(a)(3); *see also Serrao v. Merit Systems Protection Board*, 95 F.3d 1569, 1578 (Fed. Cir. 1996); *Ward*, 981 F.2d at 526. The appellant's allegations regarding alleged disclosures outside the grievance process are not merely a more detailed account of the claims he presented to OSC; rather, they are new allegations of protected activity separate from the grievance activity that was the core of the retaliation claim described in his submissions to OSC. *See supra* ¶ 7; *cf. Briley*, 236 F.3d at 1378. As such, he has not proven that he sought corrective action with OSC regarding these claims, and the Board lacks jurisdiction to review them in this IRA appeal. *See Serrao*, 95 F.3d at 1575-78 (finding that the Board did not have jurisdiction over a potential claim of reprisal as a result of a PPP described in 5 U.S.C. § 2302(b)(8) because the employee did not articulate such a claim with reasonable clarity and precision when seeking corrective action from OSC for

reprisal for the exercise of grievance rights); *see also Mintzmyer*, 84 F.3d at 422 (finding that an appellant's allegation in her OSC complaint that she was "subjected to constructive discharge by harassing and retaliatory behavior" was not sufficiently clear or precise to constitute exhaustion of her administrative remedies regarding four alleged retaliatory actions that she specified for the first time to the Board in her IRA appeal).

The appellant's allegations of reprisal for grievance activity are properly considered as allegations of PPPs under 5 U.S.C. § 2302(b)(9), rather than subsection (b)(8).

¶11 It is well-settled that reprisal for filing a grievance is protected by 5 U.S.C. § 2302(b)(9), not section 2302(b)(8). *Serrao*, 95 F.3d at 1574-76; *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 22 n.6 (2011); *Fisher v. Department of Defense*, 47 M.S.P.R. 585, 587-88 (1991). The U.S. Court of Appeals for the Federal Circuit has emphasized that the Board must avoid blurring the deliberate and substantive distinction established by Congress between whistleblowing disclosures protected under subsection (b)(8) and the exercise of grievance rights protected under subsection (b)(9)(A). *Serrao*, 95 F.3d at 1576 (citing *Ellison*, 7 F.3d at 1035). Thus, the court has held that an appellant cannot meet the jurisdictional requirements in an IRA appeal merely by inserting section 2302(b)(8) allegations into an agency grievance. *Id.*

¶12 Notwithstanding this clear precedent, the appellant cites *Bump v. Department of the Interior*, 64 M.S.P.R. 326 (1994), for the proposition that "it simply does not matter that the protected disclosures were made *within* the grievance process when they otherwise establish the type of fraud, waste or abuse that the WPA was intended to reach." PFR File, Tab 4 at 12; *accord* PFR File, Tab 1 at 12-13. This is a misinterpretation of *Bump* and the relevant law. In *Bump*, the Board recognized that an employee may make a number of related disclosures based upon the same operative facts. *Bump*, 64 M.S.P.R. at 332. Mr. Bump had made certain disclosures to OSC that could qualify as protected

disclosures under 5 U.S.C. § 2302(b)(8). *Id.* at 331. The Board found that he was not disqualified from pursing an IRA appeal based on reprisal for making those disclosures to OSC merely because he also may have raised them as part of a grievance. *Id.* at 331-32. That is not the situation here. As set forth above, the issue in this appeal is limited to alleged reprisal only as a result of the appellant's grievance activity and disclosures of information in that context. Thus, *Bump* is distinguishable, *see Serrao*, 95 F.3d at 1576 n.6, and the appellant's exhausted claims are properly considered as allegations of PPPs under 5 U.S.C. § 2302(b)(9), *see, e.g.*, *Serrao*, 95 F.3d at 1574-76; *Mason*, 116 M.S.P.R. 135, ¶ 22 n.6; *Fisher*, 47 M.S.P.R. at 587-88.

The provisions of the WPEA authorizing an IRA appeal based on an allegation of reprisal as a result of a PPP under 5 U.S.C. § 2302(b)(9)(A)(i) do not apply to this case.

¶13        Under the law in effect at the time of the events at issue in this appeal, an eligible individual's entitlement to seek corrective action from the Board in an IRA appeal was limited to covered personnel actions taken or proposed to be taken as a result of a PPP described in 5 U.S.C. § 2302(b)(8), i.e., retaliation for whistleblowing. *See* 5 U.S.C. § 1221(a) (2011). Because the appellant only sought corrective action from OSC regarding allegations of reprisal as a result of PPPs as described in 5 U.S.C. § 2302(b)(9), the Board lacks IRA jurisdiction over those claims under the law in effect at the time of the events at issue. *See Serrao*, 95 F.3d at 1574-76.

¶14        We now turn to the impact of the WPEA, if any, on the appellant's appeal. The WPEA was signed into law on November 27, 2012, and it had an effective date of December 27, 2012. *King v. Department of the Air Force*, 119 M.S.P.R. 663, ¶ 3 (2013). With exceptions not applicable here, under 5 U.S.C. § 1221(a), as amended by section 101(b)(1)(A) of the WPEA, an employee may seek corrective action from the Board concerning any personnel action taken, or proposed to be taken, against him as a result of a PPP described in section

2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D).[4] Amended section 2302(b)(9)(A) provides that any employee who has authority to take, direct others to take, recommend, or approve any personnel action shall not, with respect to such authority, take or fail to take, or threaten to take or fail to take, any personnel action against any employee because of:

> (A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation—
>> (i) with regard to remedying a violation of paragraph (8); or
>> (ii) other than with regard to remedying a violation of paragraph (8).

Under 5 U.S.C. § 1221(e)(1), as amended by the WPEA, and subject to the provisions of section 1221(e)(2), in any case involving an alleged PPP as described under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D), "the Board shall order such corrective action as the Board considers appropriate if the employee . . . has demonstrated that a disclosure or protected activity described under section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D) was a contributing factor in the personnel action which was taken or is to be taken."

¶15    In *Hooker*, 120 M.S.P.R. 629, ¶¶ 11-15, the Board used the analytical framework set forth in *Landsgraf v. USI Film Products*, 511 U.S. 244 (1994), to determine that the retroactive application of the new IRA appeal right in section 101(b)(1)(A) of the WPEA, as it pertains to the personnel actions taken as a result of a PPP, as set forth at 5 U.S.C. § 2302(b)(9)(B), would be impermissible because it would increase a party's liability for past conduct as compared to

---

[4] Section 2302(b)(9)(C) involves cooperating with or disclosing information to the Inspector General of an agency, or the Special Counsel, in accordance with applicable provisions of law. Section 2302(b)(9)(D) involves refusing to obey an order that would require the individual to violate a law. Neither of these subsections is implicated in this matter.

pre-WPEA liability. The same rationale is applicable here. Indeed, as in *Hooker*, the WPEA created a new Board appeal right in IRA appeals for employees who allege that a personnel action has been taken as a result of a PPP described in section 2302(b)(9)(A)(i), and it includes a new provision directing the Board to order such corrective action as the Board considers appropriate when such protected activity is a contributing factor in a personnel action. *See Hooker*, 120 M.S.P.R. 629, ¶ 15. Therefore, consistent with *Hooker*, we decline to apply in this case the new IRA appeal right in section 101(b)(1)(A) of the WPEA as it pertains to the PPPs described at 5 U.S.C. § 2302(b)(9)(A)(i) because doing so would increase a party's liability for past conduct as compared to pre-WPEA liability.[5] Thus, even assuming that the appellant made a nonfrivolous allegation that he engaged in activity that would now be considered protected under 5 U.S.C. § 2302(b)(9)(A)(i), the appellant cannot bring an IRA appeal on that basis regarding events that occurred before the effective date of the WPEA.[6]

We discern no error with the administrative judge's decision to deny the appellant's motion to compel discovery and motion to strike certain information from the record.

¶16    The appellant asks the Board to overturn the administrative judge's decision on his request to "have information that was prejudicial to this case

---

[5] The Board appeal in *Hooker* was pending when the WPEA was enacted. *See Hooker*, 120 M.S.P.R. 629, ¶ 10. Here, however, the relevant events occurred *before* the WPEA was enacted and its effective date, but the appeal was docketed *after* the effective date of the WPEA. *See, e.g.*, W-1 IAF, Tab 5 at 13-21 (May 29, 2011 step 1 grievance), 22-40 (July 22, 2011 step 2 grievance), 41-57 (September 8, 2011 step 3 grievance), 64-76 (the appellant's March 2012 OSC complaint), 77-78 (OSC's correspondence to the appellant). This difference in chronology does not warrant a different disposition. *See Hooker*, 120 M.S.P.R. 629, ¶ 11 (citing *Landsgraf*, 511 U.S. at 280).

[6] In light of this finding, we need not reach the issue of whether the appellant's claim should be considered as a claim covered by 5 U.S.C. § 2302(b)(9)(A)(ii) rather than subsection (b)(9)(A)(i).

removed from the record," and he states that he did not have a sufficient opportunity to conduct discovery. PFR File, Tab 1 at 14. Although unclear, it appears that the appellant is challenging the administrative judge's June 6, 2014 order that denied his: (1) motion for reconsideration of the order denying his motion to compel in his prior Board appeal, *Miller v. Federal Deposit Insurance Corporation*, MSPB Docket No. SF-3443-12-0301-I-1; and (2) objection to the order to show cause that made reference to his grieving his letter of warning (LOW). *See* W-2 IAF, Tab 5 at 1-2 (June 6, 2014 order); *see also* W-2 IAF, Tab 4 at 4-6 (the appellant objected to any further reference to a "LOW grievance"), 14-15 (the appellant requested reconsideration of the decision to deny his motion to compel in his prior Board appeal).

¶17 We discern no error with the administrative judge's decisions in this regard. As the administrative judge noted, the Board found in its final order in the prior Board appeal that the administrative judge did not abuse his discretion in denying the appellant's motions to compel. *See* W-1 IAF, Tab 1 at 4. Moreover, we agree with the administrative judge that the appellant's May 29, 2011 grievance "[w]ithout question" referenced the LOW. W-2 IAF, Tab 5 at 2; *see* W-1 IAF, Tab 5 at 18, 21. Accordingly, we see no basis upon which to strike the administrative judge's reference to the appellant's grieving the LOW in the show cause order.

The appellant's "new" evidence on review does not warrant a different outcome.

¶18 We have considered the draft anti-harassment policy that the appellant includes with his petition for review. *See* PFR File, Tab 1 at 17-26. We find, even if we viewed the draft policy as "new" evidence, it is not of sufficient weight to warrant an outcome different from that of the initial decision because it does not change our determination that the Board lacks jurisdiction over the appeal for the reasons set forth above. *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980).

## ORDER

¶19       This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction to review this final decision.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  You may choose to request review of the Board's decision in the United States Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both.  Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems

Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.