**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

SHARON KAY MURTHA,
          Appellant,

       v.

DEPARTMENT OF COMMERCE,
          Agency.

DOCKET NUMBERS
DC-1221-15-0140-W-1
DC-531D-14-0979-I-1

DATE: December 3, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Sharon Kay Murtha, Owings, Maryland, pro se.

Jonathan Andrew Gowen, Esquire, Suitland, Maryland, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which found that the Board lacks jurisdiction over her assertion that the agency failed to promote her, denied her a within-grade increase, and retaliated against her for whistleblowing activity. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision to supplement the administrative judge's analysis of the appellant's allegations of reprisal for whistleblowing activity, but we conclude that a different outcome is not warranted. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision.

## BACKGROUND

¶2      The appellant filed an appeal in which she challenged the agency's decision to deny her a career-ladder promotion and a within-grade increase, and she appeared to allege that these actions were taken in reprisal for protected activity. *Murtha v. Department of Commerce*, MSPB Docket No. DC-531D-14-0979-I-1, Initial Appeal File (0979 IAF), Tab 1. The administrative judge found that the Board has jurisdiction over the appellant's claims as an individual right of action (IRA) appeal. 0979 IAF, Tab 13. The appellant also filed a separate IRA appeal regarding these same issues. *Murtha v. Department of Commerce*, MSPB Docket No. DC-1221-15-0140-W-1, Initial Appeal File (0140 IAF), Tab 1. The administrative judge joined these appeals. 0979 IAF, Tab 15; 0140 IAF, Tab 3.

¶3      In the initial decision, the administrative judge found that the Board lacks jurisdiction over the claims in the MSPB Docket No. DC-531D-14-0979-I-1 for

two reasons: (1) the appellant presented no evidence or argument that the agency denied her a within-grade increase or that she sought reconsideration of such a decision; and (2) the Board could not consider her claims as an IRA appeal because she first challenged the agency's decision not to promote her through the negotiated grievance procedure. 0140 IAF, Tab 12, Initial Decision (ID) at 5-7. Regarding the IRA appeal in MSPB Docket No. DC-1221-15-0140-W-1, the administrative judge found that the Board lacks jurisdiction over the appeal for several reasons: (1) the appellant did not exhaust her administrative remedies with the Office of Special Counsel (OSC) because she failed to submit a copy of her OSC complaint or an affidavit, sworn statement, or declaration thereto; (2) she did not make a nonfrivolous allegation of a protected disclosure because her disclosures only involved typographical errors and complaints regarding performance appraisals and the failure to be promoted; and (3) she did not make a nonfrivolous allegation that any protected disclosure was a contributing factor in the agency's decision to take or not to take various actions against her. ID at 7-13. The administrative judge also addressed the appellant's contention that the agency retaliated against her for filing complaints and grievances, finding that such claims were covered by 5 U.S.C. § 2302(b)(9), not 2302(b)(8), and therefore did not qualify for protection under the Whistleblower Protection Act (WPA). ID at 13-14. He further concluded that the Board lacks jurisdiction over such complaints and grievances under the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, 126 Stat. 1465, because the substance of the appellant's grievances did not involve "remedying a violation of [section 2302(b)(8)]." ID at 14.

¶4      The appellant has filed a petition for review, the agency has filed a response, and the appellant has filed a reply. *Murtha v. Department of Commerce*, MSPB Docket No. DC-1221-15-0140-W-1, Petition for Review (0140 PFR) File, Tabs 1, 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶5　　On review, the appellant appears to raise arguments regarding her potential IRA appeal. 0140 PFR File, Tab 1.[2] She asserts that she was not aware that she had to choose between filing a grievance on the failure to promote issue or "filing with OSC/MSPB." *Id.* at 26. She also includes a copy of her original OSC complaint, which she evidently received pursuant to a Freedom of Information Act (FOIA) request. *Id.* at 39-61.

¶6　　The Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations that: (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Kerrigan v. Department of Labor*, 122 M.S.P.R. 545, ¶ 10 n.2 (2015) (citing 5 U.S.C. §§ 1214(a)(3), 1221(e)(1); *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001)).

¶7　　Regarding potential disclosures, the proper test for determining whether an employee had a reasonable belief that her disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the government evidenced one of the categories of wrongdoing discussed in 5 U.S.C. § 2302(b)(8)(A). *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221,

---

[2] Because the appellant does not challenge the administrative judge's conclusion that the Board lacks jurisdiction over her claim of a denial of a within-grade increase, we affirm the initial decision in this regard. *See* 5 U.S.C. § 5335(c) (explaining that an employee can only appeal to the Board an agency's reconsideration decision that determines that she is not working at an acceptable level of confidence); *see also* 0979 IAF, Tab 7 at 14 (the appellant's Standard Form 50, showing that she received her within-grade increase in 2014), Tab 9 at 2 ("I acknowledged that I received my Within Grade increase.").

¶ 22 (2014); *see Lachance v. White*, 174 F.3d 1378 (Fed. Cir. 1999).[3] Additionally, to be protected, the alleged disclosures must be specific and detailed, not vague allegations of wrongdoing regarding broad or imprecise matters. *Keefer v. Department of Agriculture*, 82 M.S.P.R. 687, ¶ 10 (1999).

¶8        We modify the initial decision to discuss the appellant's original OSC complaint, which she filed for the first time on review despite being provided opportunities to do so below.[4] Even if we consider the original OSC complaint as "new" evidence, and we conclude that she exhausted her administrative remedies with OSC, a different outcome is not warranted. The appellant's lengthy OSC complaint is not a model of clarity. Coupled with her correspondence to OSC, below, we conclude, for the purposes of our analysis, that the appellant exhausted her administrative remedies with OSC regarding the following alleged disclosures and/or protected activity: (1) reporting an error in 2007 on the Census Internet Age Search Fillable Form; (2) a 2009 "in confidence" meeting with the Division Chief; (3) her decision in 2009-2010 to discuss with staff an article that advised against using the color red on the Population Clock on the census.gov webpage; (4) a 2011 step 1 grievance (and subsequent grievances) regarding the failure to promote issue; (5) her decision to copy the Division Chief on a June 2013 email to her supervisor, R.G.; (6) her 2013 correspondence to the agency's Office of the Inspector General (OIG); (7) filing harassment and retaliation charges with Human Resources in 2013; (8) a June 2012 email to R.G. that purportedly documented 4 years of harassment, which she subsequently forwarded to the

---

[3] The reasonable belief test is set forth in section 103 of the WPEA and is codified at 5 U.S.C. § 2302(b)(13). *Shannon*, 121 M.S.P.R. 221, ¶ 22 n.3.

[4] It appears that the appellant had asked OSC for a copy of her original complaint but was advised to obtain a copy pursuant to a FOIA request. 0140 IAF, Tab 8 at 19. It also appears that there was a delay in OSC providing her with the responsive information. 0140 PFR File, Tab 1 at 61.

Newsletter Article JIRA Ticket[5]; (9) a 2010 email that the appellant sent to T.J., an Associate Director and Acting Division Chief, regarding Error Reports; and (10) correspondence with the Honorable Barbara A. Mikulski.  0140 PFR File, Tab 1 at 39-60; 0140 IAF, Tab 4; 0979 IAF, Tabs 4-5.[6]  The appellant also appeared to exhaust her claim that, in retaliation for these disclosures and/or protected activity, the agency did not promote her as early as 2008 (and failed to promote her for several years thereafter), issued a Letter of Reprimand, proposed a 4-day suspension, effected the 4-day suspension, gave her lower performance appraisals, and harassed her.

¶9        We find that the appellant has not nonfrivolously alleged that she had a reasonable belief that she was making a protected disclosure described under 5 U.S.C. § 2302(b)(8)[7] or engaged in protected activity described under 5

[5] JIRA is an issue tracking tool for software.  0140 PFR File, Tab 1 at 45; *see* Atlassian, www.atlassian.com/software/jira (last visited Dec. 2, 2015).

[6] It is unclear from the appellant's numerous lengthy submissions exactly what disclosures she is alleging are protected in the appeals before the Board.  For instance, in her response to the agency's motion to dismiss, she stated that the harassment "[b]egan" when she reported that the agency needed to change the census.gov webpage population clock font from red, "[i]ntensified" when she went up the chain of command and disagreed with her low performance review, "[i]ncreased" to administrative actions "and more" when she filed a grievance, "[s]lowed" when she filed harassment charges with Human Resources, and "[i]ncreased" after Human Resources determined that there was no harassment.  0140 IAF, Tab 8 at 10.  The agency included portions of the appellant's deposition transcript in its response to her petition for review, which appeared to show that she only considered the red font discussion, the grievance, and the June 2013 email to her supervisor, upon which she copied the Division Chief, to be the protected disclosures in this matter.  0140 PFR File, Tab 3 at 25-51.  Because we do not have the full transcript of the appellant's deposition, coupled with the confusing presentation of these allegations, we will evaluate all of the alleged disclosures and/or protected activity that we could identify from her correspondence with OSC.

[7] Some of the appellant's alleged disclosures, such as the 2009 "in confidence" meeting and the 2009-2010 discussion regarding the use of red font on the webpage, occurred before the December 27, 2012 effective date of the WPEA.  *See* WPEA § 202.  We therefore have analyzed these disclosures under the WPA, which states that a protected disclosure is one in which an employee reasonably believes evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety.  *Mudd v.*

U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  For instance, the appellant explained in her OSC complaint that she requested the 2009 "in confidence" meeting with the Division Chief "to find out how to better communicate" with her previous supervisor and current Branch Chief, C.H., and "not to complain."  0140 PFR File, Tab 1 at 39.  The appellant's attempt to find out how to better communicate with C.H. does not constitute a protected disclosure under 5 U.S.C. § 2302(b)(8).

¶10        To the extent that the appellant attempts to recharacterize her "in confidence" meeting with the Division Chief as a disclosure of C.H.'s "mismanagement" and/or "abuse of authority," 0140 PFR File, Tab 1 at 5, or a report that C.H. was not performing her duties pursuant to Department Administrative Order (DAO) 202-430,[8] 0140 IAF, Tab 10 at 8, the Board may consider only those charges of whistleblowing that the appellant asserted before OSC, and it may not consider any subsequent recharacterization of those charges put forth by the appellant in her appeal to the Board.  *D'Elia v. Department of the Treasury*, 60 M.S.P.R. 226, 231 (1993), *overruled on other grounds by Thomas v. Department of the Treasury*, 77 M.S.P.R. 224 (1998), *overruled in part on other grounds by Ganski v. Department of the Treasury*, 86 M.S.P.R. 32 (2000).  Even if we did not view the appellant's assertions as a recharacterization, we are not persuaded that she made a nonfrivolous allegation of a reasonable belief of gross mismanagement, an abuse of authority, or a violation of a law, rule, or regulation.  *See* 5 U.S.C. § 2302(b)(8)(A).  The Board has defined gross mismanagement as

---

*Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 (2013) (citing 5 U.S.C. § 2302(b)(8)).  As noted by the Board in *Mudd*, the WPEA amended 5 U.S.C. § 2302(b)(8)(A) by expanding protections to any disclosure of information by an employee which the employee reasonably believes evidences: (i) *any* violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  *Id.*, ¶ 5 n.3 (emphasis in original).  Even if we considered this amendment here, we find that it does not change the result in this case.  *See id.*

[8] According to the appellant, DAO 202-430 required, among other things, "continuous dialogue with employees" and "discuss[ing] the final appraisal with employees."  0140 IAF, Tab 10 at 8.

management action or inaction that creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission, and it has defined an abuse of authority as an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons. *Lane v. Department of Homeland Security*, 115 M.S.P.R. 342, ¶ 19 (2010); *Applewhite v. Equal Employment Opportunity Commission*, 94 M.S.P.R. 300, ¶ 11 (2003). Neither of these definitions appears to apply to the 2009 "in confidence" meeting. Additionally, we are not persuaded that the appellant's purely subjective belief that she was disclosing a violation of DAO 202-430 was reasonable. *See Lachance*, 174 F.3d at 1381 ("A purely subjective perspective of an employee is not sufficient even if shared by other employees.").

¶11    To the extent that the appellant argued before OSC and the administrative judge that she was perceived as a whistleblower for going up the chain of command during this "in confidence" meeting, 0140 IAF, Tab 4 at 31; 0140 PFR File, Tab 1 at 5, we modify the initial decision to discuss this assertion. To meet her jurisdictional burden, the appellant must show that she exhausted her remedies with OSC and make nonfrivolous allegations that the agency perceived her as a whistleblower, and the agency's perception was a contributing factor in the decision to take or not take the personnel action at issue. *King v. Department of the Army*, 116 M.S.P.R. 689, ¶ 10 (2011). We find that the appellant has not nonfrivolously alleged that C.H. or any other agency officials involved in the alleged personnel actions at issue believed that she made or intended to make disclosures that evidenced the type of wrongdoing listed under 5 U.S.C. § 2302(b)(8) during the "in confidence" meeting. *Cf. King*, 116 M.S.P.R. 689, ¶ 7 (discussing several fact patterns that can support a finding that an individual was perceived as a whistleblower).

¶12    The appellant's apparent decision to raise the issue of the proper use of the color red on the Population Clock on the census.gov webpage in 2009-2010 with

C.H. and other staff does not—on its face—appear to constitute an allegation of gross mismanagement, a gross waste of funds, an abuse of authority, a violation of a law, rule, or regulation, or a substantial and specific danger to public health or safety. Although it is admittedly unclear what she is arguing, the appellant appears to have asserted below and on review that C.H., by dismissing her concern over the use of red font, was violating customer service procedures and/or the Civil Service Reform Act of 1978 (CSRA). 0140 IAF, Tab 10 at 11; *see* 0140 PFR File, Tab 1 at 4-5 (discussing Executive Order 12,862, Setting Customer Service Standards). Even if we assumed for the purposes of our analysis that the Executive Order constitutes a law, rule, or regulation, the appellant has not persuaded us that her belief in the propriety of the use of the color red reasonably constitutes a violation of that Executive Order. Notably, the Executive Order generally requires agencies to establish customer service standards and plans. *See* Exec. Order No. 12,862, 58 Fed. Reg. 48,257 (Sept. 11, 1993). As for the appellant's apparent contention that, in raising this issue, she disclosed that C.H. violated the CSRA, and in particular, the merit system principle at 5 U.S.C. § 2301(b)(4), which requires all employees "to maintain high standards of integrity, conduct, and concern for the public interest," 0140 IAF, Tab 10 at 11, we are not persuaded that this purely subjective opinion constitutes a reasonable belief that C.H.'s managerial decision constituted a violation of law, rule, or regulation. Rather, it appears that the appellant merely disagreed with C.H.'s decision regarding the use of red font on the census.gov webpage, and such activity is not protected by the whistleblowing statute. *See, e.g.*, *Riley v. Department of Homeland Security*, 315 F. App'x 267, 270 (Fed. Cir. 2009) ("The e-mails indicate that Riley had personal disagreements with legitimate managerial decisions such as where to send him on assignments and terminating his employment based on problems with his travel charge card. Those disagreements fall far short of demonstrating any violations of law, gross

mismanagement, abuse of authority, or reporting of any other kind of activity that could be considered a whistleblowing disclosure.").[9]

¶13     We have considered the appellant's grievances on the failure to promote issue.  0140 IAF, Tab 6.[10]  Prior to the WPEA, the Board lacked jurisdiction in an IRA appeal to hear a claim of reprisal for filing grievances, which is based on 5 U.S.C. § 2302(b)(9), not section 2302(b)(8).  *See Serrao v. Merit Systems Protection Board*, 95 F.3d 1569, 1576 (Fed. Cir. 1996); *Mudd*, 120 M.S.P.R. 365, ¶ 6.  The WPEA expanded the scope of 5 U.S.C. § 2302(b)(9) to include:

> (A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation—
>
> (i) with regard to remedying a violation of paragraph (8); or
>
> (ii) other than with regard to remedying a violation of paragraph (8).

*Mudd*, 120 M.S.P.R. 365, ¶ 7.  The WPEA extended the Board's jurisdiction over IRA appeals to claims arising under section 2302(b)(9)(A)(i), but not to those arising under (b)(9)(A)(ii).  *Mudd*, 120 M.S.P.R. 365, ¶ 7; *see* WPEA § 101(b)(1)(A).  The appellant has not nonfrivolously alleged that her grievance

---

[9] Although *Riley* is an unpublished decision, the Board may rely on unpublished U.S. Court of Appeals for the Federal Circuit decisions if it finds the court's reasoning persuasive.  *E.g.*, *Herring v. Department of the Navy*, 90 M.S.P.R. 165, ¶ 13 n.* (2001).  Given the similarities between the appellant's assertion in this regard and the one in *Riley*, we find the court's reasoning persuasive.

[10] Presumably in response to the administrative judge's finding in the initial decision in MSPB Docket No. DC-531D-14-0979-I-1, the appellant states under penalty of perjury in her petition for review that she was not informed that she had to choose between filing a grievance and filing with "OSC/MSPB."  0140 PFR File, Tab 1 at 26; *see* 5 U.S.C. § 7121(g) (explaining that an employee affected by certain prohibited personnel practices must elect to pursue a remedy through the Board, a negotiated grievance procedure, or through OSC).  We modify the initial decision to supplement the administrative judge's analysis of this issue.  Even if we assume for the purposes of our analysis that the appellant did not make a "knowing and informed" election under 5 U.S.C. § 7121(g) when she filed her grievance challenging the agency's decisions not to promote her, *see Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 14-16 (2013), the Board lacks jurisdiction over her contention that the agency failed to promote her in reprisal for her grievance activity in this IRA appeal for the reasons described herein.

correspondence involved remedying a violation of 5 U.S.C. § 2302(b)(8).[11] Therefore, we find that the Board lacks jurisdiction to consider her claim that the agency took personnel actions against her in reprisal for filing grievances in the context of this IRA appeal under the WPA or the WPEA. *See, e.g.*, *Mudd*, 120 M.S.P.R. 365, ¶¶ 6-7.

¶14 Even if we were to construe the appellant's February 2013 complaint to the agency's Human Resources office as a complaint under 5 U.S.C. § 2302(b)(9)(A)(i), the Board also lacks jurisdiction over this claim. We have considered the response from the Chief of the Employee Relations Branch, Human Resources Division, which discussed the appellant's allegations of harassment and retaliation by C.H. and R.G., but did not mention any kind of disclosures. 0979 IAF, Tab 4 at 79-80. We conclude that the appellant has not nonfrivolously alleged that she sought assistance from the Human Resources branch to remedy a violation of 5 U.S.C. § 2302(b)(8) and that the Board also lacks jurisdiction to consider her claim that the agency retaliated against her in reprisal for filing this complaint.[12]

¶15 We further modify the initial decision to correct the administrative judge's analysis of the appellant's purported disclosure in her complaint to the agency's OIG in MSPB Docket No. DC-1221-15-0140-W-1. Contrary to the administrative

---

[11] For instance, the union relied on her performance appraisals and qualifications in its step 2 grievance correspondence. 0140 IAF, Tab 6 at 21-23. The appellant's separate response to the agency's step 2 grievance decision stated that one of the reasons that she believed that C.H. denied her promotion was due to a "personal vendetta." *Id.* at 25-29. It does not appear, however, that she asserted in this or any of her grievance correspondence that any such vendetta stemmed from reprisal for whistleblowing activity.

[12] Alternatively, we have considered whether the appellant's complaint to Human Resources constitutes a protected disclosure under 5 U.S.C. § 2302(b)(8)(A). We conclude that the appellant has not nonfrivolously alleged that she had a reasonable belief that she disclosed in this complaint any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

judge's statements in the initial decision, certain disclosures made to an agency's OIG are protected. The statute at 5 U.S.C. § 2302(b)(8)(B) states that it is a prohibited personnel practice to take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee because of:

> [A]ny disclosure to . . . the Inspector General of an agency . . . of information which the employee . . . reasonably believes evidences —(i) any violation (other than a violation of this section) of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

The record reflects that sometime in 2013, the appellant sent an email to the agency OIG in which she: (1) explained that she was being harassed by her prior supervisor and current branch chief "in retaliation for work related incidents . . . [that made] her look bad in the eyes of upper management"; (2) stated that she met with Employee Relations about filing charges and was informed that DAO 202-955[13] only addresses harassment based on discrimination; and (3) inquired as to whether the information that she received from Employee Relations was correct. 0979 IAF, Tab 1 at 6-7; 0140 PFR File, Tab 1 at 49. In its March 25, 2013 acknowledgement letter, the agency's OIG advised her that her complaint may be better resolved by OSC, Human Resources, or through the equal employment opportunity process. 0979 IAF, Tab 5 at 5. The appellant's correspondence to the OIG, and her vague assertion of retaliation for "work

---

[13] DAO 202-955, which became effective in March 2000, "provide[s] guidance to managers and supervisors in taking action on incidents or allegations of harassment prohibited by Federal law, i.e., harassment based on sex, race, color, national origin, age, religion, disability[,] or reprisal," *available at* http://www.osec.doc.gov/opog/dmp/daos/dao202_955.html. DAO 202-955 appears to provide a process that is complimentary to the equal employment opportunity (EEO) process. *See id.* ("This Order provides an expedited process for reviewing allegations of harassment, terminating actual incidents of harassment, and taking disciplinary actions as appropriate, while the EEO complaint process is focused on providing remedial relief to the employee affected by the discrimination."). It does not appear that DAO 202-955 applies to allegations of whistleblowing activity because it does not mention whistleblowing activity, protected disclosures, or OSC.

related incidents," does not constitute a nonfrivolous allegation of a protected disclosure. *See, e.g.*, *Carr v. Department of Defense*, 61 M.S.P.R. 172, 180-81 (1994) (concluding that the appellant's letter, which alleged that the agency had subjected him to "unwarranted stress" and "unjustifiable harassment," did not set forth any specific law, rule, or regulation that she may have believed was violated, nor did it set forth allegations of gross mismanagement, abuse of authority, a gross waste of funds, or a substantial and specific danger to public health or safety).

¶16        Regarding the June 16, 2013 email that the appellant copied to the Division Chief, it appears that she sent this email to her supervisor, R.G., after R.G. denied her training request.  0979 IAF, Tab 4 at 77-78.  We have reviewed this email, in which the appellant, among other things, alleges that she did not receive in writing the reasons why her promotion was denied, questions why "EVERYTHING" she does is "scrutinized and judged with no explanation," explains that the harassment continues, and asserts that she is frustrated.  *Id.* (capitalization in original).  We similarly conclude that the appellant has failed to nonfrivolously allege that she had a reasonable belief that she made a protected disclosure in this correspondence.[14]

---

[14] Even if we somehow concluded that the June 16, 2013 email constituted a protected disclosure, we are precluded from considering the appellant's assertion that this email led to the agency's decision to suspend her for 4 days.  0979 IAF, Tab 4 at 77.  Rather, the record reflects that the appellant waived her right to challenge the proposed suspension and the agency's decision to effect the suspension in a Resolution Agreement.  *See, e.g.*, 0979 IAF, Tab 4 at 73-76 (explaining that, among other things, the agency agreed not to issue a decision on the proposed 4 day suspension, unless the appellant, within a 1-year period, engaged in an act of misconduct, and she agreed to waive all claims "arising from the Notice of Proposed Suspension . . . and any suspension imposed"); *id.* at 71-72 (proposed suspension), 81 (memorandum of suspension).  In the absence of any allegation of fraud, coercion, mistake, or duress regarding the Resolution Agreement, we agree with the administrative judge that the appellant waived her right to assert that either the proposed suspension or the imposition of the suspension constitutes personnel actions in this IRA appeal.  ID at 12-13.

¶17    Finally, we have considered the remaining disclosures, but we conclude that the appellant has failed to nonfrivolously allege that she had a reasonable belief that she was disclosing any of the categories of information protected by 5 U.S.C. § 2302(b)(8).  For instance, the appellant has not explained how the Error Reports email that she sent to an Associate Director/Acting Division Chief constitutes a protected disclosure; rather, she only stated in her OSC complaint that the email "made [C.H.] look bad."  0140 PFR File, Tab 1 at 44.  She also has failed to nonfrivolously allege a reasonable belief of a protected disclosure when she reported in 2007 what appears to be a typographical error on the Census Internet Age Search Fillable Form.  0140 PFR File, Tab 1 at 39.  We have reviewed the appellant's correspondence with Senator Mikulski[15] and her description of her June 2012 email to R.G., both of which appear to recite the relevant chronology and complain of harassment.  0140 IAF, Tab 4 at 48-52, 54-59, 61-62; 0140 PFR File, Tab 1 at 41-48.  We similarly find that none of this correspondence constitutes a reasonable belief of a protected disclosure of any of the categories described in 5 U.S.C. § 2302(b)(8).

¶18    In light of our finding that the appellant did not make a nonfrivolous allegation that she had a reasonable belief that she made a protected disclosure under 5 U.S.C. § 2308(b)(8) or that she engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), we need not analyze the appellant's assertions regarding the remaining elements of an IRA appeal.

---

[15] At one point, the appellant clarified in her correspondence to OSC that she "believe[d] that the harassment [she] was subjected to increased to administrative actions after [she] filed [her] grievance, not because of [her] contact with OSC or Congress."  0140 IAF, Tab 4 at 69 (emphasis in original).  As stated above, because of the confusing nature of the appellant's allegations, we have considered all of the disclosures identified in her OSC complaint and subsequent correspondence with OSC. *See supra* ¶ 8 n.6.

**NOTICE TO THE APPELLANT REGARDING**
**YOUR FURTHER REVIEW RIGHTS**

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States

Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.